Dudley O. NEVINS, Respondent,

v.

Felicia A. GREEN, Appellant.

No. WD 71750.

Missouri Court of Appeals,
Western District.

Aug. 24, 2010.

Felicia A. Green, Appellant Pro-se.

Sandra G. Hessenflow, for Respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

Felicia Green ("Mother") appeals the trial court's judgment determining paternity, child custody, and child support. In her five points on appeal, Mother claims that the trial court erred in: (1) including a 29% overnight visitation adjustment in its retroactive child support order; (2) awarding Dudley Nevins ("Father") an excessive overnight visitation adjustment; (3) awarding Father a $354.00 credit based on health insurance expenses; (4) awarding Father the dependent tax exemption every other year; and (5) accepting a parenting plan that Mother had not approved. The judgment is reversed and remanded in part and affirmed in part.

**Factual and Procedural Background**

Mother and Father's child ("Daughter") was born on July 2, 1998. Mother and

Father were never married and never lived together. Daughter has primarily resided with Mother for her entire life. For the first nine years of Daughter's life, Mother and Father worked out an arrangement by which Father had overnight visitation with Daughter on Wednesdays and Fridays. During this period of time, the parties did not have a court-ordered visitation or custody arrangement, and neither Father nor Mother had been ordered to pay child support.

In March of 2008, Mother filed an administrative case seeking child support from Father. At the time Mother filed the case, Father's overnight visitation with Daughter ceased. In April of 2008, the Family Support Division ordered Father to pay $601.00 per month in child support and ordered Father to maintain health insurance for Daughter.

On July 3, 2008, Mother was served with Father's petition for determination of paternity, child support, and child custody. Mother and Father settled some issues prior to trial, leaving the amount of child support and the allotment of custody time as the primary issues before the trial court. Both parties agreed that they would have joint custody of Daughter and that Father would receive significant custody time. However, under Father's plan, his time with Daughter would be in larger blocks surrounding the weekends, and under Mother's plan, Father's days with Daughter were spread throughout the week and weekend. The trial court found that Mother's parenting plan was in the best interests of Daughter because it more closely resembled the visitation arrangement Daughter was already used to.

Both parties submitted Form 14s to the trial court. The trial court rejected Mother's Form 14 because it did not accurately calculate Father's overnight visitation adjustment and also rejected Father's Form 14 because it did not accurately reflect Mother's income. In its own Form 14, the court included a 29% overnight visitation adjustment for Father based on the number of days he would keep Daughter overnight. This resulted in a presumed child support amount of $315.00 per month. The trial court found that the amount was not rebutted as being unjust or inappropriate.

The trial court made the child support award retroactive to July 3, 2008, the date on which Mother was served with Father's petition. The court stated that it was aware that the award included a reduction for visitation that Father did not actually exercise during the pendency of the case. However, the court found that a retroactive overnight visitation adjustment was nonetheless justifiable because the testimony at trial indicated that Mother would not allow Father to have the visitation he previously enjoyed during the pendency of the case. The retroactive application resulted in an overage of $3,432.00, and the court accepted Father's recommendation that the overage be used as a credit against his future child support obligations.

Although the administrative order required Father to enroll Daughter in a health benefit plan, Mother and Father agreed that Mother would provide health insurance for Daughter. However, Father testified that he would not be able to drop Daughter from his coverage for several months. Father also testified that his cost for health insurance coverage for himself and Daughter was $118.00 per month. The court divided that figure by two to determine the cost of providing coverage to Daughter and multiplied it by the number of months Father would have to pay for coverage until he could remove daughter from his plan. This resulted in $354.00 in expenses to Father, and the trial court

found that Father was entitled to a credit of $354.00 toward his future child support obligations.

Lastly, the trial court's judgment included a paragraph which gave Mother the right to claim Daughter as a dependent on her federal and state income tax returns for even-numbered years and gave Father the same right for odd-numbered years. While this provision was included in Mother's parenting plan, when asked at trial whether it was correct that she did not have a problem with the court allocating the exemption to Father every other year, Mother responded, "No." However, because the trial court adopted Mother's parenting plan, its judgment included the tax exemption provision.

This pro se appeal by Mother followed.

### Standard of Review

■ The judgment of the trial court in a paternity action will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *K.L.A. v. Aldridge*, 241 S.W.3d 458, 460 (Mo.App. W.D.2007). The appellate court defers to the trial court's determinations of credibility and views the evidence and reasonable inferences drawn therefrom in the light most favorable to the judgment. *Id.*

### Retroactive Child Support Award

■ In her first point on appeal, Mother contends that the trial court erred in including a 29% overnight visitation adjustment in its retroactive award of child support.[1] The trial court justified the inclusion of the adjustment by stating that,

although Father did not exercise visitation during the pendency of the case, the testimony at trial indicated that this was only because Mother denied visitation. Mother claims that this finding was against the weight of the evidence in that Father did not testify that Mother denied him visitation.

■ In determining an award of child support, the trial court must follow a two-step procedure. *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869–70 (Mo.App. W.D.2001). In the first step, the trial court must determine and find for the record the presumed child support amount ("PCSA") in accordance with Form 14. *Id.* at 870. In the second step, "the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate." *Id.* In determining the PCSA, Line 11 of Form 14 provides for an adjustment for a portion of the amounts expended by the parent obligated to pay child support during periods of overnight visitation or custody. The Directions, Comments for Use and Examples for Completion of Form No. 14, Line 11, provide that the adjustment shall be calculated by multiplying the basic child support amount on Line 5 by a percentage "based on the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay support under any order or judgment."

■ A trial court has discretion to order the effective date of a child support order at a time subsequent to the date of filing. *Overstreet v. Overstreet*, 214 S.W.3d 347, 348 (Mo.App. E.D.2007); *see also*

1. We note that Father claims that the issue of whether the child support award would be retroactive was decided by the parties prior to trial. However, when the trial court asked Father's attorney to sum up the issues in the case at the end of the trial, counsel for Father stated that Mother had raised an issue regarding whether Father should get a credit for visitation that he did not have during the pendency of the case.

§ 452.340.1 (providing that a court may make an award of child support retroactive to the date of the filing of the petition). However, Mother does not contend that the trial court may not make the child support award effective as of the date she was served with the petition but, rather, claims that the court erred in including the overnight visitation credit in the retroactive award because the inclusion of the credit was not supported by the evidence.

In applying the award of child support retroactively, the court noted that it was aware that the award including a reduction for visitation that Father did not actually exercise while the case was pending; however, the court found that there was testimony indicating that Mother would not allow Father to exercise the visitation he had previously enjoyed during the pendency of the case. Therefore, the court found that the inclusion of the credit in the retroactive award was proper in that it would be inequitable to allow Mother to gain financially for failing to allow Father to have visitation with Daughter while the case was pending. Mother claims that this finding is not supported by the evidence in that Father never testified that Mother denied him visitation.

In his brief, Father states that he testified that, once Mother filed the administrative child support case, Mother would not provide adequate visitation and that the visitation Mother did offer was very sporadic. The transcript pages Father cites for this testimony reveal that, when Father's attorney asked whether his visits with Daughter ceased after Mother filed the administrative case, Father simply responded, "Yes." When Father's attorney asked whether his visits with Daughter had been sporadic during the last year, Father responded, "Very sporadic." Father's attorney did not ask him why visitation had ceased, and at no point in his testimony did Father state that Mother had prevented him from seeing Daughter.[2]

Father points to other testimony which he alleges supports the court's finding that Mother denied him visitation. Father testified that he did not have an enforceable parenting plan during the pendency of this case, and there was evidence that the parties had participated in three mediations in which they were unable to agree upon a visitation schedule. While Father agreed on cross-examination that it was unfair for him to receive a credit for overnight visitation that he did not exercise, he also agreed on re-direct that it was unfair that he did not have overnight visits when he did not have a parenting plan in effect. Lastly, Father testified that, at the time the administrative order went into effect, the visitation arrangement he and Mother had agreed on no longer worked for him.

Although this testimony may indicate that Father no longer agreed with the visitation arrangement the parties had been following, and that Mother and Father could not come to an agreement on a new plan during the mediations, nothing in Father's testimony suggests that Mother denied Father his regular Wednesday and Friday visitation. Father's attorney asked Father if visitation ceased but did not question Father as to why this had occurred or ask Father if Mother denied him visitation. Where the testimony at trial did not establish that Father's visitation

---

2. The only testimony indicating that Mother denied visitation was Mother's admission that she told Father not to pick Daughter up for his next regular visitation day after he had received notice of the administrative case. Mother testified that Father had been angry, and she wanted to give him time to cool off. However, this single instance of a denial of visitation cannot be the basis for the trial court's finding because it occurred prior to the pendency of this case.

ceased because Mother denied him visitation with Daughter, the trial court's finding that Mother did not allow Father to have the visitation he previously enjoyed was not supported by substantial evidence.[3] Therefore, the trial court erred in including a 29% overnight visitation credit in its retroactive child support award. Mother's first point is granted, and the trial court's inclusion of the 29% credit in its retroactive award of child support is reversed and remanded.

### Overnight Visitation Adjustment Percentage

■ In her second point on appeal, Mother contends that the trial court erred in awarding Father a 29% overnight visitation credit.[4] Mother claims that the credit is excessive in that Father never presented evidence to establish that he would incur significant expenses as a result of overnight visitation or custody.

The Directions, Comments for Use and Examples for Completion of Form No. 14, Line 11, set forth a table of percentages to be used in calculating an overnight visitation credit. If the parent obligated to pay support is awarded 92 to 109 overnight periods, the table provides for an adjustment of 10%. However, if the parent is awarded overnight periods of more than 109 days per year, the court may apply an adjustment greater than 10%. Mother argues that that there was no evidence to support a credit above 10%. However, it is clear from the record that both Mother

and Father's parenting plans provided that Father would have custody of Daughter for 155 overnight periods. Father presented evidence as to how the number of overnight periods was used to arrive at the 29% credit. Mother does not challenge this calculation.

■ Mother's only remaining argument is her contention that Father did not introduce any evidence to establish that he would incur significant expenses as a result of overnight periods of custody. The Directions, Comments for Use and Examples for Completion of Form No. 14, Line 11, Comment B(2) provides that the overnight visitation adjustment may be rebutted if the parent obligated to pay child support does not incur significant expenditures due to periods of overnight visitation or custody. Therefore, Father did not have the burden of presenting evidence that he incurred significant expenditures in order to receive the adjustment; rather, Mother was required to submit evidence showing that Father did not incur such expenditures in order to rebut the adjustment. Where Mother did not present evidence rebutting the adjustment and does not claim that the court incorrectly calculated the adjustment, the trial court did not err in awarding Father a 29% adjustment based on expenditures resulting from overnight periods of custody. Mother's second point is denied.

### Health Insurance Credit

■ In her third point on appeal, Mother contends that the trial court erred in

---

**3.** Father argues that the court's inclusion of the credit was based on other concerns, namely the court's belief that the previously ordered child support amount was too high. However, this is not a proper basis upon which to award a credit for amounts expended during overnight visitation when Father did not actually exercise visitation, and the testimony at trial did not establish that Mother denied visitation.

**4.** Mother also claims in this point that Father submitted two Form 14s in violation of Rule 88.01. Nothing in Rule 88.01 prohibits parties from submitting more than one Form 14. Furthermore, this court has considered numerous cases in which a party has submitted more than one Form 14. *See, e.g., Gerlach v. Adair*, 211 S.W.3d 663, 667 (Mo.App. W.D. 2007). The trial court did not err in receiving two Form 14s from Father.

awarding Father a $354.00 credit toward future child support based on expenditures associated with maintaining insurance for Daughter. Mother does not claim that the court should not have awarded Father a credit at all but, rather, argues that the amount of the credit was incorrect.

Although the administrative order required Father to maintain health insurance for Daughter, Mother and Father agreed prior to trial that Mother would maintain health insurance. However, Father testified that he would not be able to terminate his health coverage plan for Daughter for five to six months when a new open enrollment period began. Father testified and introduced exhibits showing that his health plan for both himself and Daughter cost $118.00 per month. The trial court divided this amount in half to arrive at the conclusion that it cost Father $59.00 per month to provide insurance for Daughter. The court then multiplied this figure by six, the number of months during which Father could not drop Daughter from his health plan. The ultimate amount Father had to expend during that period was $354.00.

Mother argues that Father's pay stubs reflect an expense of $30.00 per month for the cost of health insurance, which, under the trial court's calculation, would mean that Father expended only $15.00 per month on insurance for Daughter. Mother claims that, therefore, Father is entitled to only a $90.00 credit based on the six months during which he cannot drop Daughter from his health plan. Mother's reference to an amount of $30.00 only includes Father's expenditures for medical insurance. Mother's calculation ignores, without explanation,[5] the evidence that Father incurred expenses for other types of

insurance for Daughter, including dental and vision. Where there was evidence of Father's expenses and evidence to support the trial court's calculation of the $354.00 credit, Mother has not demonstrated that the trial court erred in awarding Father the $354.00 credit. Mother's third point is denied.

### Award of Tax Exemptions

■ In her fourth point on appeal, Mother contends that the trial court erred in allowing Father to claim Daughter as a dependent on his federal and state income tax returns for odd-numbered years. Mother claims that the trial court's award does not comply with 26 U.S.C. § 152(e) and that Assumption 7 of Form 14 presumes that the parent entitled to receive child support gets the tax exemption.

For federal tax purposes, the parent who has custody for the greater portion of the calendar year is referred to as the "custodial parent." 26 U.S.C. § 152(e)(4)(A). The other parent is referred to as the "noncustodial parent." *Id.* at § 152(e)(4)(B). Based on the trial court's judgment, Mother will be the custodial parent of Daughter for federal tax purposes. Under federal law, the custodial parent will receive the exemption. *Simon–Harris v. Harris*, 138 S.W.3d 170, 182 (Mo.App. W.D.2004). An exception to the general rule provides that the noncustodial parent may claim the child as a dependent if the custodial parent signs a written declaration that he or she will not claim the child as a dependent for the taxable year, and the noncustodial parent attaches the declaration to his or her return for the taxable year. 26 U.S.C. § 152(e)(2)(A)–(B).

5. Mother appears to claim that the administrative order required Father to provide medical insurance only, but the order states that Father must maintain or enroll Daughter in a

"health benefit plan" and does not limit Father's responsibility to medical insurance only.

Missouri courts have held that, based on the language of § 152(e), "the trial court does not have the authority to merely order that the non-custodial parent get the dependency exemption." *See, e.g., Simon–Harris,* 138 S.W.3d at 183. To effectuate the allocation of the tax exemption to Father, the noncustodial parent, the trial court is required to order Mother, the custodial parent, to sign the declaration described in § 152(e) for each odd-numbered year. Therefore, on remand the trial court must modify its order to require Mother to sign the declaration for each odd-numbered year so that Father may take the exemption for those years.[6]

■ Mother also argues that the trial court erred in giving Father the exemption because the Form 14 assumptions presume that the parent entitled to receive child support gets the exemption. Assumption 7 of Form 14 provides that "[t]he schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support." This court has held that, because the Form 14 child support calculation "is based, in part, on Assumption 7, to award a dependent tax exemption to the child-support obligor, the trial court is required to rebut the PCSA as being unjust or inappropriate, even if the dollar amount is not rebutted." *See, e.g., Jarvis v. Jarvis,* 131 S.W.3d 894, 898 (Mo. App. W.D.2004). Therefore, to award Father the tax exemption, the trial court was required to rebut the PCSA and make a written finding that it was unjust or inappropriate.[7] *See id.* Because the trial court expressly found that the PCSA of $315.00 per month was not rebutted as being unjust or inappropriate, the court erred in awarding Father the tax exemption. On remand, the trial court must either make a finding that the PCSA is unjust or inappropriate or reverse the tax exemption award to Father. As noted earlier, if on remand the court allocates the tax exemption to Father, it must order Mother to sign the declaration described in § 152 of the Internal Revenue Code.

## Adoption of Mother's Parenting Plan

■ In her final point on appeal, Mother contends that the trial court erred in accepting a parenting plan that she did not approve of or sign before it was submitted in court. In arguing that she did not approve of the plan, Mother refers to various matters outside the record, particularly in her reply brief. Although Father filed a motion to strike her reply brief, we

6. Father claims that Mother's allegation of error relates to a technical wording error and that, therefore, Mother's failure to file a Rule 78.07(c) motion to amend the judgment left her claim unpreserved. However, Mother argues not only that language ordering her to sign the declaration should have been included but also that the trial court did not have the authority to make the order it did make in that it contravenes § 152 of the Internal Revenue Code. Furthermore, resolution of this issue benefits Father by ensuring that the trial court orders Mother to sign the declaration so that he can take the exemption. Additionally, resolution of the issue serves the purpose of § 152(e), which is to achieve certainty in the allocation of the dependency exemption in order to resolve dependency disputes without the involvement of the Internal Revenue Service. *See Vohsen v. Vohsen,* 801 S.W.2d 789, 791 n. 2 (Mo.App. E.D.1991).

7. Father again argues that the issue was not preserved due to Mother's failure to file a Rule 78.07(c) motion to amend the judgment requesting that the court make a finding that the PCSA was unjust or inappropriate. However, as in *Jarvis,* Mother argues that the finding the court did make was erroneous—*i.e.,* that the PCSA was not unjust or inappropriate—and that this finding was inconsistent with the award of the tax exemption to Father. Therefore, we find that Mother did not have to file a Rule 78.07(c) motion in order to preserve this issue.

deny Father's motion as we do not consider the matters outside the record to which Mother refers.

Mother cites only Rule 55.03(a) in support of her argument that the parenting plan must be signed by the parent before being submitted to the court. Rule 55.03(a) provides that "[e]very pleading, motion and other filing shall be signed by at least one attorney of record in the attorney's individual name." However, a parenting plan is not a pleading, a motion, or the type of filing described in the rule. Furthermore, the rule requires only that the party's attorney sign such a document, not the client herself. Therefore, Mother has failed to demonstrate error on the part of the trial court in accepting her parenting plan. Mother's final point is denied.

### Father's Motion for Sanctions

After Mother filed her pro se appeal, Father filed a motion for damages pursuant to Rule 84.19 alleging that Mother's appeal was frivolous. The trial court has already awarded Father $2,500.00 to partially offset Father's expenses in defending the appeal. Furthermore, because we have determined that two of Mother's points on appeal are meritorious, Father's motion for damages is denied.

### Conclusion

The trial court's inclusion of a 29% overnight visitation credit in its retroactive child support award is reversed and remanded. Additionally, the trial court's award of the tax exemption to Father for odd-numbered years is reversed and remanded. On remand, the trial court must either find that the PCSA is unjust or inappropriate or reverse the award of the tax exemption to Father. If the court chooses to allocate that tax exemption to Father, it must also order Mother to sign a written declaration for each year in which

Father is awarded the tax exemption. The remainder of the trial court's judgment is affirmed.

All concur.