John M. KOHL, Appellant,

v.

Jill M. KOHL, Respondent.

No. WD 74592.

Missouri Court of Appeals,
Western District.

April 2, 2013.

Paul T. Graham, Jefferson City, for Appellant.

Daniel E. Hunt, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

John Kohl ("Father") appeals from a judgment entered in the Circuit Court of Cole County granting Jill Kohl's ("Mother") motion to modify child support. For the following reasons, the judgment is reversed and remanded for further proceedings.

Father and Mother were married on November 21, 1992. Four children were born of the marriage.

On May 26, 2005, approving and incorporating a separation agreement between the parties, the circuit court entered its judgment dissolving the marriage between Father and Mother. The court awarded Father and Mother joint legal and physical custody of the four minor children. In the settlement agreement, the parties expressly agreed that "the presumed child support amount, as calculated pursuant to Rule 88.01, Section 452.340, and Form 14 is unjust and inappropriate." Father was ordered to pay $565.00 per month in child support and awarded two of the four available tax dependency exemptions.[1]

On December 21, 2006, again pursuant to an agreement between Father and Mother, the court entered a judgment increasing Father's child support obligation to $1,309.00 per month. The parties submitted a jointly prepared Form 14, which they agreed was accurate and "represents an amount of child support that is just, reasonable and appropriate under the circumstances." The Form 14 submitted by the parties reflected that Mother's gross income was $1,625.00 per month and Father's gross income was $14,166.00 per month. Father received a Line 11 credit of 33 percent for overnight visitation. The trial court ordered that Father's child support be increased to $1,309.00 per month in accordance with the stipulated Form 14. In all other respects, the decree of dissolution was left in full force and effect.

Subsequently, due to Father's work demands, Mother agreed to quit a second job she had on Sunday nights in order to watch the children, and Father agreed to pay as additional child support an amount equal to the income Mother derived from that job, approximately $150.00 per month. Accordingly, Father began paying Mother $1,450.00 per month. Father also voluntarily paid for several miscellaneous expenses incurred on behalf of the children

---

1. The judgment provided that the child support amount would be $358.00 per month for the first ten months and then increase to $565.00.

including school lunches, karate lessons, tutoring, and summer camps.

On August 27, 2010, Mother filed a motion to again modify child support. She claimed that circumstances had changed in that (1) the parties' incomes had changed to where there would be more than a twenty percent change in child support, (2) Father was not exercising his Sunday overnight visitation, (3) business trips caused Father to miss approximately three weeks per year of his visitation time, and (4) more than three years had passed since the last modification.

Following an evidentiary hearing, on July 13, 2011, the circuit court entered its judgment finding that substantial and continuing change in circumstances had occurred including, but not limited to: (1) an agreement by the parties to exercise a "visitation" schedule different than that ordered by the court, (2) a change in the incomes of the parties giving rise to a change of more than twenty percent in the presumed child support amount, and (3) the passage of more than three years since the last modification. The circuit court averaged Father's gross yearly income from the previous four years and thereby determined that his monthly gross income, including bonuses, was $16,143.00. The court found that Mother's "gross wage of $2,073.00 per month most accurately reflects [Mother]'s grossly [sic] month [sic] income taking into account all sources of income including but not limited to bonuses and interest income." The court found that Father was not entitled to a line 11 credit for overnight visitation because Mother's gross income fell below the $2,100.00 threshold for a parent with four children. Based on those findings, the court adopted a Form 14, prepared by Mother's attorney subsequent to trial, calculating Father's presumed child support to be $2,647 per month and ordered Fa-

ther to pay that amount retroactive to September 1, 2010. The court also altered the previous division of the dependency tax exemptions to award Mother all four and ordered Father to pay Mother $2,000.00 in attorney's fees. Father brings eight points on appeal, several of which are interrelated.

"The standard of review in a court tried case, including one pertaining to modification of child support, is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Cross v. Cross*, 318 S.W.3d 187, 189 (Mo.App. W.D.2010) (internal quotation omitted). "We will affirm the judgment unless there is no substantial evidence to support the trial court's decision, the decision is against the weight of the evidence, or the trial court's decision erroneously declares or applies the law." *Wightman v. Wightman*, 295 S.W.3d 183, 187 (Mo.App. E.D.2009). "We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and we disregard all contrary evidence." *Id.*

█ In his first point, Father claims that the trial court erred in modifying child support based upon the twenty-percent standard of § 452.370 because that standard does not apply when the previous judgment was based upon an agreement that deviated from the child support guidelines. He argues that the previous judgment deviated from the child support guidelines by allocating him two of the four child dependency exemptions.

█ "Child support remains subject to modification even though the original decree incorporated a settlement agreement between the parties." *In re Marriage of Wilson*, 181 S.W.3d 575, 583 (Mo. App. S.D.2005). "Pursuant to Section 452.370.1, in order to modify a child support award, there must be a showing of changed circumstances so substantial and

continuing as to make the terms of the support award unreasonable." *Id.* "The parent seeking the modification has the burden of proving a substantial and continuing change in circumstances sufficient to modify child support." *Id.* "Once the party seeking modification has met the burden of showing changed circumstances, the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable Supreme Court Rules." *Eaton v. Bell,* 127 S.W.3d 690, 697 (Mo.App. W.D.2004).

Section 452.370.1 provides:

If the application of the child support guidelines and criteria set forth in section 452.340 and applicable supreme court rules to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable, if the existing amount was based upon the presumed amount pursuant to the child support guidelines.

§ 452.370.1. "The twenty percent provision in section 452.370.1 is inapplicable when the existing child support amount is not based upon the presumed amount under the child support guidelines." *Talley v. Bulen,* 193 S.W.3d 881, 884 (Mo.App. S.D.2006).

Under the federal income tax code, the parent who has custody over the child at issue for the greater portion of the calendar year is entitled to claim the dependency exemption for that child. *Nevins v. Green,* 317 S.W.3d 691, 698 (Mo.App. W.D. 2010). "An exception to the general rule provides that the noncustodial parent may claim the child as a dependent if the custodial parent signs a written declaration that he or she will not claim the child as a dependent for the taxable year, and the noncustodial parent attaches the declaration to his or her return for the taxable year." *Id.*

"Assumption 7 of Form 14 provides that '[t]he schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the child entitled to support.'" *Id.* at 699. "This court has held that, because the Form 14 child support calculation is based, in part, on Assumption 7, to award a dependent tax exemption to the child-support obligor, the trial court is required to rebut the [presumed child support amount ("PCSA")] as being unjust or inappropriate, even if the dollar amount is not rebutted." *Id.* (internal quotation omitted). "Therefore, to award Father the tax exemption [in the original judgment], the trial court was required to rebut the PCSA and make a written finding that it was unjust or inappropriate."[2] *Id.*

Father claims that, because the judgment modifying the original dissolution decree left intact the even division of the dependency tax exemptions, that it was implicit in its judgment that the presumed Form 14 amount was rebutted as unfair and unreasonable. *See Talley,* 193 S.W.3d at 884 ("[W]hen a trial court deviates from the PCSA, then, *a fortiori,* the amount awarded is not based upon the presumed

---

**2.** We recognize that the Southern District of this Court has held that it will "review the award of the tax exemption [to a child-support obligor] on an abuse of discretion standard." *In re Marriage of Eskew,* 31 S.W.3d 543, 550 (Mo.App. S.D.2000). While acknowledging the Southern District's holding, this Court has steadfastly declined to adopt the abuse of discretion standard outlined in *Eskew. Nevins,* 317 S.W.3d at 699; *Jarvis v. Jarvis,* 131 S.W.3d 894, 898 (Mo.App. W.D. 2004); *Vendegna v. Vendegna,* 125 S.W.3d 911, 914 (Mo.App. W.D.2004).

amount pursuant to the child support guidelines."). Father's contention is belied, however, by the express statements made by the parties in their joint stipulation in support of modification and by the trial court's judgment modifying the child support amount. As noted *supra*, the parties submitted a jointly prepared Form 14, which they agreed was accurate and "represents an amount of child support that is just, reasonable and appropriate under the circumstances." The trial court found that "[t]he Form 14 ... is accurate and the parties agree that it represents an amount of child support that is just, reasonable and appropriate under the circumstances." In light of Father's stipulation and the trial court's express findings, the trial court cannot be deemed to have implicitly found the Form 14 amount to have been rebutted.[3] The judgment providing for the first modification of the child support amount was "based upon the presumed amount pursuant to the child support guidelines." *§ 452.370.1*. Accordingly, the twenty-percent provision of § 452.370.1 was applicable to this case. Point denied.

In his second point, Father claims the trial court erred in modifying the child support amount because Mother failed to state a cause of action in her petition or to meet her burden of showing a substantial and continuing change in circumstances warranting modification. He contends that Mother was required to plead and prove that she was unable to support the children in the manner contemplated when the prior child support agreement was entered.

This claim is based entirely upon the argument asserted in his first point claiming that Mother was not entitled to rely upon the twenty-percent provision in § 452.370.1. As we have found that argument to lack merit, his argument in this point is likewise meritless. Mother's petition averred a substantial and continuing change in circumstances based upon a twenty-percent change in the presumed child support amount as provided for in § 452.370.1. Her petition sufficiently pleaded her claim. Point denied.

■ In his third point, Father argues that the trial court erred in modifying the monthly child support amount from $1,309.00 to $2,647.00 because it "failed to consider [Mother]'s voluntary underemployment" in making its Form 14 calculations. He contends that the undisputed evidence established that Mother was underemployed because she was working less than 40 hours per week and that the trial court was obligated to take that underemployment into account in calculating child support.

■ "Where one of the parties is not employed or is underemployed, the trial court *may* attribute income to that party in the context of a Form No. 14 calculation depending on the factual circumstances." *Wightman*, 295 S.W.3d at 190 (emphasis added and internal quotation omitted). Thus, "[i]n calculating child support, it is within the trial court's discretion to impute income to one of the parents if he or she is underemployed." *Pickering v. Pickering*, 314 S.W.3d 822, 836 (Mo.App. W.D.2010). "Courts are allowed to impute income to a parent in order to prevent the parent from escaping responsibilities to the family by

3. Moreover, the evidence reflects that Mother would have received little to no additional benefit from being able to claim the two exemptions she agreed to give to Father in the original decree. Thus, the presumption that Mother, as the spouse receiving child support, was able to take advantage of the dependency exemptions cannot be deemed to have been, in any significant way, undermined by the continued award of two of the exemptions to Father in the modification judgment.

deliberately or voluntarily reducing income." *Wightman,* 295 S.W.3d at 190. "The trial court's determination of whether to impute income to a party is within its discretion and we will not reverse the trial court's determination absent a manifest abuse of that discretion." *Hall v. Hall,* 336 S.W.3d 188, 200 (Mo.App. W.D.2011) (internal quotation omitted). "What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." *Payne v. Payne,* 206 S.W.3d 379, 385 (Mo.App. E.D. 2006).

In the case at bar, Mother testified that she worked 32 to 35 hours per week as an orthodontic assistant. She stated that her hours were dependent upon the schedule of the doctors in the office and that she was unable to work a 40–hour week. In addition to her orthodontic work, Mother had been working a shift waiting tables at a restaurant on Sunday evenings until Father asked her to quit that employment so that she would be available to watch the children overnight on the two Sunday nights per month that he was supposed to have custody of them. Moreover, Mother testified that, despite the division of parenting time set forth in the parenting plan, Father left the children in her custody approximately 90% of the time. Thus, Mother's lack of full-time employment appears directly attributable to the actions of Father, and, under the circumstances, the trial court certainly cannot be said to have abused its discretion in determining that she was not underemployed. Point denied.

■ In his fourth point, Father claims that the trial court erred in failing to properly consider the $208.00 per month in

interest income that Mother admitted receiving from a certificate of deposit in making its Form 14 calculations and, therefore, erred in modifying Father's child support obligation from $1,309.00 to $2,647.00 per month. In its judgment and on its Form 14, the trial court attributed $2,073.00 per month in income to Mother. That amount is exactly one-twelfth, rounded to the nearest dollar, of the $24,870.00 yearly wage income reflected on Mother's 2010 W–2 form from Bankhead Orthodontics, which she submitted into evidence at trial. Mother did not present evidence of her income from any other years. Father argues that the adoption of an amount corresponding to the W–2 reflects that the trial court did not take into account the $208.00 per month Mother received in interest income from the CD.[4]

■ Mother, as the party seeking modification of child support, bore the burden of proving a substantial and continuing change warranting modification. *Moran v. Mason,* 236 S.W.3d 137, 140 (Mo.App. S.D.2007). "Changed circumstances sufficient to support modification must be proven by detailed evidence and must also show that the prior decree is unreasonable." *In re Marriage of Lindhorst,* 347 S.W.3d 474, 476 (Mo. banc 2011).

Mother sought to establish a change in circumstances based upon a twenty-percent change in the presumed child support amount under Form 14. Mother's gross monthly income was an integral part of the Form 14 calculation and, accordingly, proving her income was an integral part of carrying her burden of proof.

At trial, as evidence of her income, Mother introduced into evidence her 2010

---

4. Since Mother's income fell just $27.00 below the $2,100.00 threshold for Father being able to receive a Line 11 reduction for overnight visitation, *Directions, Comments for Use and Examples for Completion of Form No. 14, Line 11,* even a modest miscalculation of Mother's income could have a substantial effect on the presumed child support amount.

income tax return and her 2010 W–2 from her employment at Bankhead Orthodontics. Furthermore, she testified that the W–2 was accurate. That W–2 shows Mother having received $24,870.03 in gross income in 2010 from Bankhead Orthodontics. Thus, in 2010, Mother had an average monthly gross income from that employment alone of $2,072.50. This generally corresponds with Mother's testimony that she worked 32 to 35 hours per week and was paid $16.00 per hour.[5] Mother did not introduce evidence of her income from any year other than 2010, and she presented no evidence indicating any likelihood that her income from her work at the orthodontic office would decrease in the future. As Mother admitted also receiving approximately $208.00 per month in interest from her CD, on Mother's evidence alone, the trial court's finding that her total monthly gross income was $2,073.00 appears to be against the weight of the evidence.

Mother contends that the trial court could properly have relied upon the wages reflected on her 2010 tax return, which excluded $3,896.87 in non-taxable contributions to her 401(k) from her income. However, voluntary contributions to a 401(k) may not be properly deducted in calculating a party's income for purposes of maintenance or child support. *McKown v. McKown*, 280 S.W.3d 169, 174 (Mo.App. W.D.2009).

Mother also contends that the trial court could have taken into account that she quit her Sunday evening job four months into 2010, thereby reducing her wages from the amount reflected on her 2010 tax return. Certainly, Mother's wages from the job she quit at Father's behest did not need to be considered in determining her future

gross income; but that does nothing to reduce her gross income from the orthodontic office, and Mother offered no testimony or other evidence that her income from her work as an orthodontic assistant was likely to decrease.

During oral argument, Mother further argued that the trial court could have found that her gross income would be less based upon the uncertainty of her receiving future bonuses. Mother noted that the judgment specifically states that its $2,073.00 gross monthly income figure takes "into account all sources of income including but not limited to bonuses and interest income."

The trial court made that finding, however, only after specifically noting, in the same sentence, that *Father* had failed to present evidence regarding "what bonuses if any [Mother] had received in the previous three years." In so doing, the trial court improperly shifted the burden of proof on this issue to Father.

As noted by the trial court, the record is devoid of any evidence reflecting "what bonuses *if any* [Mother] had received in the previous three years." When asked if she received bonuses, Mother merely responded, "On occasion." Later, Mother offered the following testimony related to bonuses:

Q: The bonuses that you receive, are those guaranteed?

A: No.

Q: Speculative?

A: Yes.

Q: Vary from year to year?

A: Yes.

---

**5.** If Mother worked 32 hours per week for four weeks, her monthly gross income would be $2,048.00. At 35 hours per week, her monthly income from this employment would be $2,240.00.

Q: Do you believe that should be included in your income when figuring out the amount of child support?

A: No, not necessarily.

The foregoing testimony was the sum total of the evidence presented at trial on the subject of bonuses received by Mother. Furthermore, no evidence was presented indicating that any bonus amount had been included on Mother's 2010 W–2 or 2010 tax return that were introduced into evidence, and as noted *supra,* the total amount reported on the W–2 corresponds with Mother's testimony that she had worked 32 to 35 hours per week and received $16.00 per hour in wages. Without any evidence related to when Mother had received bonuses or the amount she received, any reduction in her gross income based upon the uncertainty of her receiving future bonuses is not supported by substantial evidence.

In sum, the trial court's finding that Mother's monthly gross income was $2,073.00 is against the weight of the evidence. If Mother were to work only 32 hours per week, at $16.00 per hour, her monthly gross income would be in excess of $2,048.00. Since she admittedly receives an additional $208.00 per month in interest income, the record simply cannot support a finding of gross monthly income less than $2,256.00. Point granted.

In his fifth point, Father contends that the trial court erred in making its Form 14 calculations by failing to give him a Line 11 credit for overnight visitation based upon the trial court's erroneous finding that Mother's monthly gross income was less than $2,100.00. "The Directions, Comments for Use and Examples for Completion of Form. No. 14, Line 11, set forth a table of percentages to be used in calculating an overnight visitation credit." *Nevins,* 317 S.W.3d at 697. Those directions provide, as a caveat, that no credit for overnight visitation will be allowed unless the parent receiving support has a monthly gross income in excess of $2,100.00 where there are four children at issue. *Directions, Comments for Use and Examples for Completion of Form No. 14, Line 11.* Since we have held, as reflected in the previous point, that the record does not support a finding that Mother had a gross monthly income less than $2,256.00, the trial court erred in finding that Father was not entitled to a Line 11 credit. Point granted.

In his sixth point, Father claims the trial court erred in allocating all four tax dependency exemptions to Mother. He claims that the trial court erroneously failed to consider whether the presumed child support amount on its Form 14 was unjust or inappropriate with respect to the allocation of the tax exemptions. He further argues that it was unjust and inappropriate to award Mother a tax dependency exemption that she could not use but was of substantial value to him.

In the original dissolution decree, Mother and Father were each awarded two of the four child dependency tax exemptions. In the agreed upon first modification of child support and custody, the division of the exemptions was not raised by the parties and was left unchanged by the trial court. In its latest judgment, in the parenting plan, the trial court awarded all four dependency tax exemptions to Mother.

"Assumption 7 of Form 14 provides that '[t]he schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the child entitled to support.'" *Nevins,* 317 S.W.3d at 699. Under the Federal Income Tax Code, based on the evidence in the record, Mother is currently afforded no additional benefit for claiming four rather than three dependency exemptions

while Father would receive a significant tax benefit from being able to claim that exemption. Thus, while Mother is able to "claim" four exemptions, she is unable to lay claim to any benefit from the fourth exemption.

While the undisputed evidence reflects that Mother cannot take advantage of more than three exemptions at the present time, either by way of tax exemption amounts or earned income credit, certainly an unexpected increase in her income or a change to the tax code could change that fact in any given year. Furthermore, the children will become emancipated eventually. Accordingly, we cannot deem the trial courts award of all four exemptions to Mother to be improper per se.

However, neither equity nor the best interests of the children can be served by taking away the exemptions from Father only to have one or both go unused, as the evidence reflects is highly likely to occur in this case. Unnecessarily increasing Father's tax liability with no corresponding benefit to Mother or the children only serves to reduce the overall funds available to the family unit; would not benefit Mother or the children in any way; and can only be viewed as contrary to the best interests of the children. Bearing this in mind, on remand, the trial court may re-evaluate its award of all dependency exemptions to Mother and should attempt to structure the award to maximize the overall financial benefit of the exemptions to the family unit. This might be as simple as providing that, in any given year in which one or more child dependency exemptions would have no effect on her tax liability, Mother is to timely convey any such surplus exemption(s) to Father or as inflexible as award of specific exemptions subject to later modification.

■ In his seventh point, Father claims that the trial court erred in finding

him to have $16,143.00 in monthly gross income because that amount was not supported by substantial evidence and was against the weight of the evidence. He claims that the trial court improperly attributed relocation bonuses that would not recur to his future income.

■ The decision to include bonus income in the computation of the presumed child support amount under Form 14 is within the trial court's sound discretion. *Russell v. Russell*, 210 S.W.3d 191, 198 (Mo. banc 2007). In reviewing the trial court's decision, "[w]e give deference to the trial court's determination of the credibility of the witnesses; and the evidence, with all the inferences flowing therefrom, is viewed in the light most favorable to the judgment." *Cross*, 318 S.W.3d at 190 (internal quotation omitted).

At trial, Mother testified that she believed Father's monthly income to be $16,143.00 per month based upon averaging the total income reported on the last four years of income tax returns he filed. Those income tax returns were admitted into evidence. In its judgment, the trial court expressly found: "For the last four years, [Father] has earned an average gross yearly income of $193,717.25 excluding non-taxable income in the form of pension contributions. As a result, [Father]'s total monthly gross income based on all of his yearly earnings including bonuses is $16,143.00 per month."

In an effort to rebut Mother's testimony regarding his gross income, Father testified at trial that, when he and Mother relocated to Wentzville in 2006, he received a one-time relocation bonus "somewhere between $35,000 and $50,000." He also testified that he received a relocation differential of about $15,600 per year from 2007–2009 and that those payments ceased in 2009. Father contends that the trial

court erred in considering the income related to his relocation, by way of including those bonus amounts in the amounts averaged, in determining his current gross income.

"Whether [this Court] would have reached the same conclusion based on the evidence presented is not the issue." *In re Marriage of Angell,* 328 S.W.3d 753, 760 (Mo.App. S.D.2010). The trial court was not required to accept Father's testimony related to the bonuses as credible. Indeed, the trial court is "free to believe or disbelieve part, all, or none of the testimony of any witness, and may disbelieve even uncontradicted testimony." *Id.* at 756. Affording the trial court the level of deference required by our standard of review, its finding that Father's monthly gross income is $16,143.00 is supported by the evidence and is not against the weight of the evidence. *See In re Marriage of Bolton v. Bolton,* 950 S.W.2d 268, 273 (Mo. App. E.D.1997) (finding no error where the court disregarded a parent's testimony that he would not be receiving certain bonuses in the future and averaging parent's past bonuses); *Neal v. Neal,* 281 S.W.3d 330, 341 (Mo.App. E.D.2009) (affirming the trial court's decision to accept father's testimony that he would not receive certain bonuses in the future as credible and basing its gross income determination just on the most recent year but noting that the trial court could have assessed credibility differently and included the bonuses in its calculation of gross income). Point denied.

In his final point, Father argues that the trial court erred in making its modified child support award retroactive to September 1, 2010, because such an award did not expressly provide him credit for the additional amounts he had voluntarily paid for the children's expenses over that period of time. The trial court clearly has the discretion to make an award of child support retroactive to the date the petition requesting modification was filed, *Nevins,* 317 S.W.3d at 695, and Father does not challenge that authority. Thus, the issue actually presented by Father is whether the trial court erroneously denied him credit for additional amounts paid to Mother in additional child support and in payment for specific expenses incurred on behalf of the children.

The judgment did not address credits for amounts that Father had paid in addition to the prior child support amount. Mother acknowledges that Father was "absolutely" entitled to some credit for amounts paid. She further concedes that the existing judgment allows for such credit to be awarded by the trial court if the parties are unable to agree thereupon. As the judgment would allow for Father to be credited for amounts paid in support of the children and this issue has yet to be decided by the trial court, the issue is not ripe for appellate review. We note, however, that the trial court is free to address the issue of credits on remand. Point denied.

Accordingly, because the trial court's finding regarding Mother's gross income is not supported by the evidence and because the trial court erroneously failed to give Father a Line 11 credit for overnight visitation in its Form 14 calculations, the judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.