

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| ANASTASIA M. HOFFMAN, | ) | No. ED99057 |
| | ) | |
| Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Douglas R. Beach |
| RICHARD W. HOFFMAN, | ) | |
| | ) | |
| Appellant. | ) | Filed: March 11, 2014 |

### *Introduction*

Richard Hoffman (Father) appeals and Anastasia Hoffman (Mother) cross-appeals from the trial court's judgment modifying the judgment of dissolution of marriage to increase Father's child support obligation. Father contends that the trial court erred in imputing income to him for the purposes of calculating child support because the evidence did not support the trial court's findings that Father was underemployed and, even if imputation of income was appropriate, the trial court's Form 14 calculation was against the manifest weight of the evidence. Father also argues that the trial court erred in failing to average Mother's previous five years of gross income for purposes of calculating child support. In her cross-appeal, Mother asserts that the trial court erred in failing to impute to Father a substantially higher income and in calculating the parties' work-related childcare costs in the Form 14. We affirm.

## Factual and Procedural Background

Father and Mother married in 1997 and had three children together. In 2005, Mother filed a petition for dissolution of marriage, and the parties tried the matter. The trial court entered a judgment of dissolution on July 24, 2006.[1]

In the judgment of dissolution, the trial court made the following factual findings relating to the parties' employment and income: Father was self-employed in engineering sales; Father was not underemployed and, based on the average of his previous five years of income, Father earned $2,832 per month; Mother was self-employed and earned $13,758 per month. The trial court awarded the parties joint physical and legal custody and ordered them to comply with the parenting plan, incorporated into the judgment, pursuant to which Father enjoyed custody Wednesdays overnight, every other weekend, and specified holidays. The trial court ordered Father to pay Mother child support for the three children in the amount of $357 per month. In addition, the trial court ordered Father to pay 17% of work-related childcare costs.

Mother filed a motion to modify in March 2010 and an amended motion to modify in May 2011. In her amended motion, Mother requested the trial court increase Father's child support obligation because, since the date of dissolution, "circumstances have changed so substantially and continuing so as to make the terms of the original decree unreasonable." Specifically, Mother alleged that: Mother's income decreased through no fault of her own; Father "has had sufficient time to earn income greater than the income [attributed] to him" by the trial court in its judgment of dissolution; and "the children are older, and therefore are incurring greater expenses." Father filed a cross-motion to modify requesting, among other things, a

---

[1] The trial court subsequently amended the judgment of dissolution on September 21, 2006 and November 17, 2006.

reduction in the amount of his child support obligation to Mother on the grounds that Father's "income has substantially decreased."[2]

The trial court held a hearing on Mother's amended motion to modify and Father's cross-motion to modify on October 17 and 21, 2011. Mother called as a witness Dr. Max Lorenz, a career and executive coach. Dr. Lorenz performed an employability evaluation to determine Father's income potential based on his work history and education.[3] Dr. Lorenz testified that, in 1992, Father graduated *summa cum laude* from University of Missouri-Rolla with a bachelor of science in mechanical engineering. After graduation, Father worked approximately six or seven years for Exxon Corporation as a design engineer and later as a sales engineer. Father later worked as a sales engineer for Van Pak Corporation for approximately two years. At Van Pak, Father earned over $100,000 per year. In 1997, Father started his company, Hoffman Packaging Services, Inc. Dr. Lorenz testified that Father's yearly income at Hoffman Packaging averaged $58,000.

Dr. Lorenz performed a salary survey for sales engineers and sales representatives in the St. Louis and Midwest regions. He concluded that, based on Father's educational background

---

[2] Mother also filed a motion to determine amounts due and three motions to cite for contempt, and Father filed a motion to determine amounts due and a motion to dismiss. On the first day of trial, the parties reached a stipulated agreement as to the issues in Mother's motions for contempt (i.e., Father's child support arrearage, Father's failure to sign documents relative to Mother's life insurance policy, and Father's refusal to bring children to their scheduled activities). However, the trial court considered at trial Mother's request for attorneys' fees and costs associated with her motions. In a judgment dated May 22, 2012, the trial court ordered Father to pay Mother $1,030.87 for the children's uncovered medical expenses and denied Mother's motions for contempt. In a separate judgment dated May 23, 2012, the trial court ruled on the parties' motions to modify and ordered Father to pay Mother $5,000 toward her attorneys' fees. The parties do not appeal the trial court's rulings on those matters.

[3] Dr. Lorenz reviewed a career background information form completed by Mother, copies of the parties' income tax returns, and sworn testimony from the dissolution case and from litigation between Father and his former employer, Van Pak Corporation. Dr. Lorenz also interviewed one of Father's former bosses.

3

and fifteen years' experience in engineering sales, an annual salary of between $80,000 and $100,000 per year "would be a reasonable expectation" for Father. On cross-examination, Dr. Lorenz acknowledged that he did not interview Father.

Mother testified that she was a chemical engineer and, at the time of dissolution, she was operating her own company and "had a big project with Monsanto." After "the 2007 tax year," Mother lost her largest clients because they reduced their "contractor budgets." In 2009 and 2010, Mother's company operated at a loss. In 2011, Mother accepted a job at Gallus Biopharmaceutical, where she earned about $7,333 per month.

Mother stated that Father was paying her $357 per month in child support for the parties' three children. Mother testified to various expenses she paid for the children, including, but not limited to: $319 per month for the children's medical insurance; over $997 per month for work-related childcare; and $332 per month for the parties' youngest daughter's full-day kindergarten. Mother explained that she was seeking an increase in Father's child support obligation because:

> My income has gone down since the divorce decree and I feel that the children's father has more potential and ability to make more money than what was determined at the divorce decree, and from what his income tax records have been the last few years, I feel like he should be contributing more. I feel a lot of pressure to provide for my family, and $357 for three children is really tough.

Mother requested that the trial court increase Father's child support obligation to $1,835 per month.

Father testified that he had been living rent-free with his parents since he and Mother separated in February 2005. Father continued to operate Hoffman Packaging Systems, even though, since 2007, the company's revenues have been "[f]lat, zero." Father explained that he "continue[d] the endeavor of working for Hoffman Packing Systems . . . with those type[s] of results" because "I have not found other alternatives – to do any better. And I have a 14-year

4

investment in Hoffman Packaging Systems. I know that business quite well, so you know, my hope is that the marketplace will come back strong enough that the business will also come back with it." From January 2010 to May 2010, Father worked for Radiation Oncology Systems, Inc. (ROS) selling linear accelerators. When his counsel questioned Father about his efforts to secure employment, Father responded, "I don't know that I'm particularly seeking other employment." Father later explained that, "[u]pon separation" from Mother, his "life career goal" ceased to be "maximizing income . . . ."

On cross-examination, Father testified that, since the dissolution in 2006: he gave his friend $1,000 as a wedding present; gifted his parents a GMC Yukon worth between $7,000 and $10,000; and paid the down payment on a $48,000 Cadillac Escalade, which he drove on a daily basis but his parents owned. Father also acknowledged that he had applied for "ten different credit cards" and, in completing the applications, he listed his income as $100,000. Father testified that, since his divorce, his parents had purchased condominiums in the Lake of the Ozarks and Florida, and he had loaned his parents $100,000 to purchase the condominium in Florida. Father maintained a jet ski and a boat at the condominium in the Lake of the Ozarks, and visited both destinations regularly. In regard to his employment, Father stated that he had not applied for any jobs, but "network[ed] simultaneously with trying to make my business work." When Mother's counsel asked Father, "Why don't you apply for jobs, sir?," Father answered, "I've chosen not to do that at this time . . . . My children's needs are fully met when they're in my custody, to my knowledge. I've never been told otherwise."

On May 23, 2012, the trial court entered its judgment modifying the judgment of dissolution. The trial court found: "[I]t is not reasonable that [Father] continue to work at Hoffman [Packaging]. The Court finds that it is reasonable that [Father] take a job elsewhere in

the workforce as his own business is a failure. Hoffman Packaging is not a viable company." The trial court further found that the "frequency and length of [Father's] trips and vacations to the Lake of the Ozarks and Florida are indicative of a lifestyle that casts substantial doubt on [Father's] diligence in trying to earn a living from Hoffman [Packaging]." Based on Dr. Lorenz's testimony, the trial court found that Father "could make $39,000 per year."

In regard to Mother's income, the trial court found that "[i]t is not appropriate to average [Mother's] earnings as she is no longer self-employed because she was unable to support herself through self-employment and is now a full-time Form W-2 employee at Gallus [Biopharmaceuticals] earning a salary of $7,333.34 per month. She is unable to earn the higher income from her self-employment." Based on these findings, the trial court determined that a "change of circumstances has occurred that is so substantial and continuing as to make the terms of the original decree unreasonable as it relates to child support . . . ," and it ordered Father to pay Mother $812 per month for three children. Father appeals and Mother cross-appeals.

### Standard of Review

"When reviewing a child support modification order, we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law." Hern v. Hern, 173 S.W.3d 653, 655 (Mo.App.E.D. 2005) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). We will not disturb a child support award unless the evidence is palpably insufficient to support it. Forde v. Forde, 190 S.W.3d 521, 531 (Mo.App.E.D. 2006). "We defer to the trial court's credibility determinations and view the evidence in the light most favorable to the judgment." Hern, 173 S.W.3d at 655.

6

*Discussion*

*I. Father's Appeal*

In his first point on appeal, Father claims the trial court erred in imputing income to him for the purpose of calculating his child support obligation because the evidence did not support the finding that Father was underemployed. In his second point on appeal, Father contends that, even if imputation were proper, the evidence did not support the amount of income the trial court imputed to him.[4] Mother counters that the trial court properly imputed income to Father because substantial evidence established that Father was underemployed and capable of earning at least $39,000 per year. We address Father's first and second points together.

In calculating child support, the trial court is required to determine and find for the record the presumed child support amount (PCSA) pursuant to Rule 88.01, using Civil Procedure Form No. 14. Neal v. Neal, 941 S.W.2d 501, 504 (Mo. banc 1997). "A Form 14 calculation of the PCSA begins with a determination of each parent's gross monthly income." Ricklefs v. Ricklefs, 39 S.W.3d 865, 874 (Mo.App.W.D. 2001) (quotation omitted). In this respect, the "Directions, Comments for Use and Examples for Completion of Form No. 14," provides: "If a parent is unemployed or found to be underemployed, 'gross income' may be based on imputed income."

"The trial court's determination of whether to impute income to a party is within its discretion and we will not reverse the trial court's determination absent a manifest abuse of that discretion." Kohl v. Kohl, 397 S.W.3d 510, 516 (Mo.App.W.D. 2013) (quotation omitted). The

---

[4] In the argument section of his brief, Father asserts that no change in circumstances existed to support the modification of his child support obligations. Father did not raise this contention in his point relied on. "An argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04 and the point is considered abandoned in this court." Richey v. Philipp, 259 S.W.3d 1, 18 n.9 (Mo.App.W.D. 2008) (quoting Brizendine v. Conrad, 71 S.W.3d 587, 593 (Mo. banc 2002)).

7

purpose of imputing income is to prevent a parent from escaping responsibility to his or her family by deliberately or voluntarily limiting his or her work to reduce income. Heck v. Heck, 318 S.W.3d 760, 765 (Mo.App.W.D. 2010). Thus, "[i]n proper circumstances, a trial court may impute income to a party according to what the party could earn by using best efforts to gain employment suitable to his or her capabilities." Krepps v. Krepps, 234 S.W.3d 605, 612 (Mo.App.W.D. 2007). "Proper circumstances" in which to impute income to a parent include situations where a parent has voluntarily reduced his or her income without justification or has lost his or her job involuntarily but "has failed to use his or her best efforts to secure new employment, refused offers of employment, or failed to make a showing that the unemployment was something other than temporary."[5] Hern, 173 S.W.3d at 655.

Courts have found that a parent voluntarily reduces his or her income to avoid paying child support where he or she fails to seek employment opportunities commensurate with his or

---

[5] The "Directions, Comments for Use and Examples for Completion of Form 14" provides:

> When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:
> (1) The parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;
> (2) The parent's occupational qualifications;
> (3) The parent's employment potential;
> (4) The available job opportunities in the community; and
> (5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

"Directions, Comments for Use and Examples for Completion of Form 14," Line 1, Comment H; see also Monnig v. Monnig, 53 S.W.3d 241, 245 (Mo.App.W.D. 2001). "These directions are consistent with case law holding that courts may impute a higher income to a noncustodial parent than he or she actually earns, if the evidence shows that the parent has the capacity to earn more but voluntarily refuses to do so." Walker v. Walker, 936 S.W.2d 244, 247 (Mo.App.S.D. 1996).

8

her education and experience. See Krepps v. Krepps, 234 S.W.3d 605, 612 (Mo.App.W.D. 2007); In re Marriage of Garrison, 846 S.W.2d 771, 776 (Mo.App.S.D. 1993); AlSadi v. AlSadi, 823 S.W.2d 123, 126-27 (Mo.App.S.D. 1992). Likewise, evidence that a self-employed parent deliberately reduced the revenue of his or her company may support the imputation of income. See Sherman, 160 S.W.3d at 387. Moreover, even where a parent presents evidence of the impact of an economic downturn, the trial court is not obligated to presume that the claimed downturn is indefinite. Goodwin v. Goodwin, 746 S.W.2d 124, 127 (Mo.App.S.D. 1988).

The evidence presented at the modification hearing established that, at the time of dissolution, Father earned an average of $2,832 per month operating Hoffman Packaging. Since 2007, however, Father had earned no income from Hoffman Packaging. Except for his five-month employment with ROS from January 2010 to May 2010, Father earned no income from employment. Father testified that he had not applied for any jobs and was not "particularly seeking other employment." He explained that he continued running Hoffman Packaging despite its failure to generate revenue because he had a fourteen-year investment in the company. Substantial evidence supported the trial court's conclusion that Father "is underemployed" and "has made no effort to either become gainfully employed or earn a living." See, e.g., Hern, 173 S.W.3d at 656.

Father asserts that the trial court erred in imputing income to him because there was no evidence to support a finding that he deliberately reduced his income to avoid paying child support. As an initial matter, we note that Father's point on appeal challenges only the trial court's finding that he was underemployed not that the record is devoid of support for a finding of a specific intent to avoid paying child support. Also, Father cites no authority to support his implicit argument that Mother must present direct evidence establishing that Father's purpose for

9

voluntarily reducing his income was to avoid paying child support. In any event, the case law is clear that, when determining whether a parent is underemployed, the "central question" is whether he or she made a good faith attempt to obtain new employment or generate income. Id. at 655; see also Krepps, 234 S.W.3d at 613; Sherman, 160 S.W.3d at 387.

Additionally, Father argues that imputation of income "was against the manifest weight of the evidence where the evidence showed that [Father] had been supporting the children since the time of the original decree and there was no evidence presented that the children's needs were not being met." Father misstates the standard for imputing income. "The purpose of imputation of income is to provide the appropriate level of support for the children." Sherman, 160 S.W.3d at 388. As discussed above, courts may impute income to an unemployed or underemployed parent to prevent him from escaping his share of the financial responsibilities to a minor child. See Denney v. Winton, 184 S.W.3d 110, 118 (Mo.App.S.D. 2006). Courts are not required to find that the unemployed or underemployed parent is failing to satisfy his current child support obligations or that the children's basic needs are unmet.

Here, the record reflects that the parties divorced in 2006, and Father's income decreased "dramatically beginning of the tax year 2007." Hoffman Packaging had earned no revenue since 2007, and Father had not sought employment since ROS terminated him in May 2010. Mother presented evidence that, at the time of the modification hearing, there were hundreds of available sales positions in the St. Louis area and two openings for sales engineers in the packaging industry. When Mother's counsel asked Father whether he thought he "should just get a regular job . . . where [he] could get an income?," Father conceded that "some people would think [he] should." Father also declared that he had "chosen not to [apply for jobs] at this time." Based on our review of the record, we conclude that Mother introduced substantial evidence to support a

10

finding that Father voluntarily reduced his income without justification.  See Cross v. Cross, 318 S.W.3d 187, 192 (Mo.App.W.D. 2010).

In regard to Father's second point on appeal, we hold that substantial evidence supported the trial court's decision to impute income to Father in the amount of $3,250 per month.  Mother presented the testimony of Dr. Lorenz, a vocational expert, who prepared an employability evaluation of Father based on Father's education and work experience.  Dr. Lorenz also researched the availability[6] and salary ranges of sales jobs in the St. Louis and Midwest regions. Dr. Lorenz testified that:

- according to salaryexpert.com, sales engineers in the Midwest earned $56,000 at the 25th percentile, $77,000 at the mid-point, and $100,000 at the 75th percentile;

- according to salaryexpert.com, sales representatives in the Midwest region earned $39,000 at the 25th percentile, $54,000 at the mid-point, and $78,000 at the 75th percentile;

- according to the Packaging Manufacturing Machinery Institute, the base salary for salespeople in 2010 was $68,000, with a total compensation of $89,000; and

- according to a survey by the Department of Labor, the mean salary in the St. Louis metropolitan area was $80,000 for a sales engineer and $76,000 for a sales representative.

Dr. Lorenz noted that, prior to 2007, Father earned an average income of $58,000 operating Hoffman Packaging and, in 2004, Father earned $84,000.  Based on the above data and Father's

---

[6] Dr. Lorenz testified that, at the time of the modification hearing, there were two local job postings for sales engineers in the packaging industry and Monster.com listed around 700 sales jobs in the St. Louis metropolitan area.

education and work history, Dr. Lorenz concluded that "between 80 and $100,000 would be a reasonable expectation."

The trial court noted that Dr. Lorenz neither interviewed Father nor factored Father's interpersonal skills into its opinion. The trial court rejected Dr. Lorenz's projection that Father could earn between $80,000 and $100,000 per year, because such amount "would be money earned by an 'accomplished' employee with a 'successful' business record" and there was "no showing that [Father] was such a successful employee who would qualify for such a good paying job." The trial court instead found that Father "could make $39,000 per year" based on Dr. Lorenz's testimony that "a person working in the Midwest with 5 years experience at the 25th percentile, with [Father's] qualifications could make this amount of income."

Contrary to Father's assertion, the trial court did not "set an amount of imputed income based on speculation." Rather, the trial court based the amount of imputed income on Father's educational and employment background and expert witness testimony. Additionally, the trial court was not required to reject Dr. Lorenz's testimony merely because Dr. Lorenz failed to interview Father. The trial court was free to believe or disbelieve all or any part of the witness's testimony, and we defer to the trial court's determinations of witness credibility. Wood v. Wood, 391 S.W.3d 41, 45 (Mo.App.W.D. 2012); Pratt v. Ferber, 335 S.W.3d 90, 93 (Mo.App.W.D. 2011).[7] Father's first and second points are denied.

In his third point on appeal, Father claims that the trial court erred in awarding Mother child support in the amount of $812 per month because, in its Form 14 calculation, "the trial court failed to use an average of Mother's previous five year gross income." Mother counters

---

[7] We note that, while the trial court accepted certain elements of Dr. Lorenz's testimony, it rejected others, such as that Father was capable of earning over $80,000 per year.

that the trial court did not err in failing to average her previous years of gross income because that figure was not an accurate indicator of her current earning capacity.

In determining Mother's gross monthly income for purposes of calculating Father's child support obligation, the trial court "was free to consider both [her] past and present earnings to determine an average that was consistent with historical earnings and representative of future earnings." Laubinger v. Laubinger, 5 S.W.3d 166, 178-79 (Mo.App.W.D. 1999). "Averaging of income is appropriate unless there is evidence that it does not reflect a parent's current earnings capacity." Forde v. Forde, 190 S.W.3d 521, 531 (Mo.App.E.D. 2006). The trial court, "in its discretion, could have chosen to ignore [Mother's] income history and look at [her] income from a single year, if it found that amount to be an accurate predictor of [her] income." Laubinger, 5 S.W.3d at 179.

At the modification hearing in 2011, Mother testified that she was earning significantly less income than at the time of the dissolution. In 2006, she was operating her own company, Hoffman Validation, and earning about $13,758 per month. However, "after 2007," Mother began losing clients and, in 2009 and 2010, Hoffman Validation earned no revenue. In 2009 and 2010, Mother performed temporary contract work for Centocor, a Johnson & Johnson Company, earning about $151,000 in 2010. In May 2011, Gallus Biopharmaceutical purchased Centocor and offered Mother a full-time position, which she accepted because her choice was "either take the job offer as a full-time direct employee or adios." At the time of the hearing, Mother was earning $7,333 per month.

In its judgment, the trial court found that Mother "makes $7,333 per month or $87,996 per year as a W-2 employee." The trial court further found: "It is not appropriate to average [Mother's] earnings as she is no longer self-employed because she was unable to support herself

13

through self-employment and is now a full-time Form W-2 employee . . . . She is unable to earn the higher income from her self-employment." Based on our review of the record, we hold that the trial court did not err in relying on a single year of Mother's income when calculating Father's child support obligation. The evidence established that, as of 2011, Mother was earning a regular salary of $7,333 per month. This figure was a reasonable indicator of Mother's future income. We therefore conclude that the trial court's determination of Mother's income was supported by substantial evidence. See, e.g., Laubinger, 5 S.W.3d at 179. Point denied.

## II.      Mother's Cross-Appeal

In her first point on appeal, Mother claims the trial court erred in failing to impute income to Father in an amount substantially higher than $39,000 per year. More specifically, Mother asserts that the trial court should have imputed income to Father in an amount "commensurate with that of a successful, accomplished employee" because Father's past history of earnings and the testimony of Mother's expert witness indicated Father was capable of earning approximately $80,000. Mother further contends that the "number chosen by the court for Father's income was based upon an arbitrary amount and not based on substantial evidence." In response, Father reasserts his argument that the trial court erred in imputing income to him because he was not underemployed.

We begin by restating the principle that an award of child support is within the trial court's sound discretion. Voinescu v. Kinkade, 270 S.W.3d 482, 489 (Mo.App.W.D. 2008). "This court does not determine what the trial court could have found; instead it determines whether the trial court's actual finding is unsupported by substantial evidence or against the weight of the evidence." Noland-Vance v. Vance, 321 S.W.3d 398, 421 (Mo.App.S.D. 2010).

As previously discussed, Mother presented the testimony of vocational expert Dr. Lorenz, who testified to salary ranges for sales representatives and sales engineers. According to Dr. Lorenz, at the lower-end, or 25th percentile, salary for sales representatives in the Midwest was $39,000, while sales engineers in the Midwest earned an average of $80,000 per year. Dr. Lorenz believed, based on his experience as a career coach and his research for this case, Father could reasonably earn between $80,000 and $100,000 per year. However, Dr. Lorenz acknowledged that he did not interview Father, even though, "It's . . . my best practice if I can speak with the people."

Other evidence at trial supported the trial court's decision to impute an amount of income to Father lower than that suggested by Dr. Lorenz. For example, the undisputed evidence established that Hoffman Packaging had not earned revenue since 2007. In addition, the only other income-generating employment Father had enjoyed since 2007 was a sales position for ROS which lasted only five months and paid Father a $2,600 per month draw.

"In reviewing the record, this court views the evidence in the light most favorable to the trial court's judgment, and defers to the trial court's credibility determinations." Potts v. Potts, 303 S.W.3d 177, 195 (Mo.App.W.D. 2010). Based on our review of the record, we conclude that the trial court's finding that Father "could make $39,000 per year" was within the trial court's discretion. See, e.g., Noland-Vance, 321 S.W.3d at 422. Point denied.

In her second point on appeal, Mother claims the trial court erred in calculating the child support amount pursuant to the Form 14 because the trial court based the cost of work-related childcare "upon the children attending childcare only 46 weeks out of the year" and there was no substantial evidence to support a finding that the children did not need childcare year-round. Father counters that "there was substantial evidence presented that the children are in the custody

of Father for six weeks every summer and, as correctly determined by the trial court, the children attend childcare only 46 weeks out of the year."

"Form 14 allows for the inclusion of the work-related child-care costs of the parent obligated to pay support in the presumed child support amount calculation." McCandless-Glimcher v. Glimcher, 73 S.W.3d 68, 80 (Mo.App.W.D. 2002). "Where a custodial parent establishes actual and necessary child care expenses incurred as a result of working, the expenses can be considered in calculating child support." Id. (quotation omitted). The inclusion of an item in the presumed child support amount calculation must be supported by substantial evidence. Ricklefs, 39 S.W.3d at 870.

Mother asserts that "[t]here was no evidence presented to the court that the children would not attend childcare, either summer or school-year care, for six weeks out of the year." However, Father testified that he had custody of the children "five to six weeks in the summer" and that he was "able to fully take advantage of each and every hour of the six – five to six weeks of summer custody that [he] had with [his] children since the divorce decree." In addition, the parenting plan incorporated into the judgment of dissolution provides that "Father shall have custody, visitation, or residential time . . . . [a]lternate weeks each summer . . . ." Father's testimony constitutes substantial evidence to support the trial court's finding with respect to childcare costs as relevant to the calculation of child support per Form 14. See, e.g., Ferry v. Ferry, 327 S.W.3d 599, 601 (Mo.App.E.D. 2010). Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Judge

Lisa S. Van Amburg, P.J., and
Gary M. Gaertner, Jr., J., concur.