

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| THE FAMILY SUPPORT DIVISION - CHILD SUPPORT ENFORCEMENT, | ) ) ) | |
| | ) | WD76997 |
| Respondent, | ) | |
| | ) | OPINION FILED: October 14, 2014 |
| JOEI NORTH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW HOWARD NORTH, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable K. Elizabeth Davis, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Joseph M. Ellis, Judge and
Thomas H. Newton, Judge

Andrew Howard North ("Father") challenges a judgment modifying his child

support obligations on three grounds. In his first two points, Father argues that the trial

court erred in classifying him as the "movant" for purposes of line 2c of the Form 14. In

his third point, Father argues that the judgment grants relief that was not requested by the

pleading of Respondent Joei North ("Mother"). Neither Mother nor Respondent Missouri

Division of Family Services - Child Support Enforcement ("DFS") filed briefs in this court or appeared at argument. The judgment is reversed in part and affirmed in part.

## FACTUAL AND PROCEDURAL HISTORY[1]

On August 15, 2005, the judgment dissolving the marriage between Mother and Father was entered in the Circuit Court of Clay County. In that judgment, Mother and Father were awarded joint legal custody of their two minor children, with Mother receiving sole physical custody. Father was ordered to pay Mother $966 per month in child support.

On or about June 5, 2008, the circuit court modified that judgment and reduced Father's support obligation to $569 per month. On February 2, 2012, the circuit court again modified the judgment, ordering Father to make certain monthly payments toward his child support arrearage to the Bankruptcy Trustee in addition to his monthly ordered payments.

On October 18, 2012, DFS filed a motion to modify on behalf of Father, requesting a decrease in Father's child support payments. In that motion, DFS alleged that there were "continuing and substantial changes and conditions" with regard to child support in the following two respects: (1) that upon application of Rule 88,[2] Form 14, Father's child support obligation would decrease by twenty percent or more, and (2) the parties have had substantial changes in their earning capacities.

---

[1] In a court-tried case, including one pertaining to modification of child support, "the evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment." *Cross v. Cross*, 318 S.W.3d 187, 190 (Mo. App. W.D. 2010) (citation omitted).

[2] All rule references are to Missouri Supreme Court Rules (2014).

Mother answered the petition through counsel. She also filed a "counter-motion for contempt" in which she alleged that Father disobeyed earlier judgments pertaining to, *inter alia*, support, attorney fees, and insurance. In that motion, Mother asked "for an Order of this Court directing that Respondent appear and show cause why he should not be held in contempt, that he be held in contempt for his failure to abide by the terms and condition of the Judgment and for such other and further relief as this court deems just and proper." Through private counsel, Father filed an answer to the "counter-motion for contempt."

On March 1, 2013 a hearing was held and the docket sheet entry for that day indicates that Father was "granted leave to file Amended pleadings without objection" and that DFS "was granted leave to withdraw without objection" as Father was now represented by private counsel. Father's child support was reduced temporarily to $300 a month until further order of the court.

A trial was held. Prior to evidence, the following exchange was held on the record:

> THE COURT:  . . . This is North and North. Let's just make sure everyone is on the same page with regard to the status of the pleadings. It was actually initiated by a motion for modification filed by the State of Missouri through the Child Support Division, but once both parties were represented by counsel, the State was allowed to withdraw. We're just going to proceed on the parties' private pleadings starting with in December of 2012 a counter-motion, which at that time was in counter to the State's motion to modify, a motion for contempt filed by [Mother].
>
> FATHER'S COUNSEL:  Your Honor, that's the only two pleadings --
>
> THE COURT:  That's it?

3

FATHER'S COUNSEL:   That's the only two pleadings that it involves.

THE COURT:   So your client is not requesting affirmative relief, but responding to the motion for contempt, and then both parties wish to present evidence which was initiated by the State's motion to modify support, is that right?

MOTHER'S COUNSEL:   Judge, I would assume that he --

FATHER'S COUNSEL:   *I would take the role of the movant because he requested the State to modify the support*.

THE COURT:   If that's what you want to do, that's perfectly fine. *You want to step into the shoes basically of the State to pursue its motion for modification of support, is that right?*

MOTHER'S COUNSEL:   If it was our role, I'd ask to dismiss it.

THE COURT:   And then are you presenting evidence then with respect to the contempt?

MOTHER'S COUNSEL:   The contempt and our answer to the motion to modify.

. . .

THE COURT:   Then, [Father's counsel], we'll go ahead and proceed with the evidence.

(Emphases added.)

Evidence was presented regarding Mother's and Father's changed earnings. Father testified, *inter alia*, that he had recently relocated to Utah and started a new job selling Ford vehicles. The issues raised in the contempt motions were resolved by the parties and are not a part of this proceeding. Both parties submitted proposed Form 14s.

Mother submitted a Form 14 that "determined that that there's a presumed child support amount of $743 per month" and that she was "asking for it to be retroactive to the

4

date of this action being initiated." Father did not object to that request, but Mother never moved to amend the pleadings.

The Commissioner issued its findings and recommendations, upon which judgment was entered by the circuit court. The court prepared its own Form 14 and determined Father's presumed child support obligation to be $707 a month, which it did not find to be unjust or inappropriate and adopted. Additionally, in its judgment, the trial court stated:

> [Father] is not entitled to claim a deduction on line 2c for his additional younger children as he is the original movant for reduction of child support, by requesting the State of Missouri to file a Motion to Modify on his behalf (which it did), seeking reduction of his child support obligation. Despite the fact that the State of Missouri was allowed to withdraw in its capacity of representing [Father's] interests in conjunction with his request for reduction of child support, [Father's] counsel clearly stated on the record, prior to the evidence at trial, that his client wished to pursue [the] relief he had requested (i.e. reduction of child support) in the State's Motion to Modify. In other words, [Father] and his counsel 'stepped into the shoes' of the State to pursue the child support reduction. Although the State was granted leave to withdraw, its pleading (i.e. the Motion to Modify) was not dismissed, and was still pending before the Court, and [Father] continued to seek relief under the allegations and prayers contained in that motion.

Father appeals. Further facts are set forth below as necessary.

## FATHER IS JUDICIALLY ESTOPPED FROM RAISING HIS FIRST TWO POINTS

Father's first and second points on appeal concern who was the "movant" in the motion to modify. In his first point, Father argues that the trial court erred in its Form 14 calculation because "it was an abuse of discretion to deny [Father] a line [2c] income adjustment in that the Court's finding that [Father] was the 'original movant for reduction

5

of child support' and therefore was not entitled to an income adjustment for his other natural children living with him was not supported by substantial evidence or was against the weight of the evidence."[3] In his second point, Father argues that the trial court erred in its Form 14 calculations of presumed child support "because contrary to the law of Supreme Court Rule 88.01 and [accompanying directions], [Father] was denied a line [2c] income adjustment in that although [Father] was not a 'moving parent in an action to increase or decrease' child support, the Circuit Court nevertheless judged [Father] was not entitled to an income adjustment for his other natural children living with him."

## Discussion

The doctrine of judicial estoppel prevents litigants from "taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance, and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time." *Mo. Land Dev. I, LLC v. Raleigh Dev., LLC*, 407 S.W.3d 676, 690 (Mo. App. E.D. 2013). Judicial estoppel can prevent a party from taking contrary positions in front of the trial court and then before an appellate court. *Owens v. ContiGroup Cos.*, 344 S.W.3d 717, 727 (Mo. App. W.D. 2011) (citing *State v. Dillon*, 41 S.W.3d 479, 486 Mo. App. E.D. 2000) ("A party may not conduct himself throughout the trial so as to leave the adversary with the understanding that a fact is uncontroverted and then take the position that it has not been proved")). "The doctrine of

---

[3]Father's first point relied on is multifarious. At very least, he challenges the trial court's judgment on two legal grounds, contesting both whether there was substantial evidence to support it and whether it was against the weight of the evidence. These challenges "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, No. 93872, 2014 WL 3107448, at *14 n.11 (Mo. banc July 8, 2014) (citing Rule 84.04). We gratuitously address the merits of Father's claim while cautioning appellate counsel to follow Rule 84.04(d).

6

judicial estoppel has been established in Missouri, and is 'designed to preserve the dignity of the courts and insure order in judicial proceedings.'" *Jeffries v. Jeffries*, 840 S.W.2d 291, 294 (Mo. App. E.D. 1992) (quoting *Edwards v. Durham*, 346 S.W.2d 90, 101 (Mo. 1961) (additional citations omitted).

While judicial estoppel cannot be reduced to a precise formula, Missouri courts have followed U. S. Supreme Court precedent indicating that whether judicial estoppel applies requires the consideration of three factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. App. E.D. 2007) (quoting *Zedner v. U.S.*, 547 U.S. 489 (2006) (additional citation omitted). However, "a court should apply judicial estoppel if the party did not act 'inadvertently.'" *Strable v. Union Pac. R. Co.*, 396 S.W.3d 417, 422 (Mo. App. E.D. 2013) (citation omitted).

In this case, Father concedes that the driving reason for his first two points on appeal is that if he was rightly considered the "moving parent," he would have been rightly denied an adjustment on Line 2c. *See Cross v. Cross*, 318 S.W.3d 187, 196 (Mo. App. W.D. 2010) (analyzing the Line 2c caveat).[4] Father's representation to the trial court that he "would take the role of movant" was unambiguous. And Father states in his

---

[4]The Directions, Comments For Use and Examples for Completion of Form No. 14 regarding the Line 2c adjustment were amended after judgment was entered in this case, and Father concedes that the amendment does not affect the action at bar. Father also acknowledged at oral argument that the amendments would not assist him in this matter if they were applicable.

brief on appeal that he "intentionally and purposefully avoided making his own motion so as to be entitled to the line [2c] adjustment which he included in his own Form 14." Father's actions of not filing his own motion to modify but in stepping into the shoes of the State were both intentional actions. We accordingly discern no inadvertent moves on Father's part.

In applying the three-factor test, then, we find first that Father's position on appeal that he was not the movant is inconsistent with his earlier statement that he "would take the role of the movant because [Father] requested the State to modify the support." Father's position on appeal additionally fails because the trial proceeded only after the court affirmed Father's position that Father wanted "to step into the shoes basically of the State to pursue its motion for modification of support." Finally, were we to allow Father to proceed with his new theory, Father would derive an unfair advantage over and impose an unfair disadvantage on Mother, who accepted Father's position at trial that Father was proceeding as the movant. Mother, in fact, stated on the record that if she were asked to take the role of movant, she would "ask to dismiss [the motion to modify]."

"The doctrine of judicial estoppel exists to prevent parties from playing fast and loose with the court." *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 143 (Mo. App. W.D. 2011) (citation omitted). While we understand that not all inconsistent positions in litigation constitute "clearly inconsistent" positions justifying the application of judicial estoppel, we cannot condone Father's clearly inconsistent positions in this case. After a review of the record, we hold that trial court did not err in making findings and conclusions consistent with Father's statements on the record that he

8

"would take the role of the movant because [he] requested the State to modify the support" and also because he allowed the trial to proceed under the notion that he wanted "to step into the shoes basically of the State to pursue its motion for modification of support." We further see no policy reasons why a movant should be allowed to claim the adjustment when the State brings an action to modify support on his/her behalf, but not allow the adjustment when the action is brought personally. We see no error in the trial court's findings as they are consistent with Father's representations on the record and his actions at trial.

Points I and II are denied.

## THE JUDGMENT EXCEEDED THE SCOPE OF THE PLEADINGS

In his third point, Father contests the trial court's determination that increased the amount of his child support obligation. He argues that "[t]he trial court erred in its Judgment increasing [Father's] monthly child support obligation because it was contrary to law in that the trial court's judgment increased child support contrary to the State's specifically prayed for relief that [Father's] child support paid to [Mother] be decreased."

## Discussion

"The relief awarded in a judgment is limited to that sought by the pleadings." *Norman v. Wright*, 100 S.W.3d 783, 786 (Mo. banc 2003) (citations omitted). "To the extent that a judgment goes beyond the pleadings, it is void." *Patz v. Patz*, 412 S.W.3d 352, 357 (Mo. App. E.D. 2013) (citation omitted).[5]

---

[5]The Supreme Court noted that although prior cases have used the term "void" in relation to the effect of a judgment exceeding the scope of the pleadings, the actual effect is that such trial court judgment is not "void as a jurisdictional matter but instead simply voidable because the judgment was based on issues that were not properly

9

Rule 55.33(b) provides that issues not raised by the pleadings but tried by express or implied consent "shall be treated in all respects as if they had been raised in the pleadings" and that "failure to so amend does not affect the result of the trial of these issues." In this case, Father did not expressly consent to try the issue of whether Mother's child support should be increased. The issue is thus whether Father impliedly consented to trial of that matter.

"With respect to trial by implied consent, Rule 55.33(b) gives direction to the trial court both in situations where no objection is made to evidence of unpleaded facts or claims and in situations where objection is made." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 132 (Mo. App. E.D. 2005) (citing *Rombach v. Rombach*, 867 S.W.2d 500, 503 (Mo. banc 1993)). *See also Thurman v. St. Andrews Mgmt. Servs., Inc.*, 268 S.W.3d 434, 445 (Mo. App. E.D. 2008). "If there is an objection, then the trial court has substantial discretion in determining whether to allow the pleadings to be amended." *Heritage Roofing*, 164 S.W.3d at 132-33 (citation omitted). But where, as here, there is no request to amend the pleadings, the trial court's discretion is limited to determining whether the issue was tried by implied consent of the parties. *Id.* "If so, the pleadings 'shall' be treated as if the issues had been properly raised." *Id.* (citation omitted).

"[I]t is well settled that evidence will give rise to an amendment of pleadings by implied consent only when it bears solely on the proposed new issue and is not relevant to some other issue already in the case." *Lester v. Sayles*, 850 S.W.2d 858, 869 (Mo.

pleaded or otherwise interjected into the case." *Smith v. City of St. Louis*, 395 S.W.3d 20, 24 (Mo. banc 2013) (citing *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009)).

banc 1993). Stated another way, "if evidence that raises issues beyond the scope of the pleadings is relevant to another issue already before the trial court, then failure to object to its admission does not constitute implied consent to amend the pleadings to conform to the new issue." *Heritage Roofing*, 164 S.W.3d at 132. "It is the burden of the party contending that an issue was tried by implied consent to demonstrate implied consent." *Smith v. City of St. Louis*, 395 S.W.3d 20, 25 (Mo. banc 2013).

Mother did not ask for an increase in child support in her motion for contempt or in any other pleading and she never moved to amend the pleadings to include such a request. The only matters the trial court had pending before it were 1) whether Father was entitled to a decrease in child support[6] and 2) whether Father should be held in contempt for failure to make payments, and that second issue "dissipated" through the course of the proceedings according to Mother.

"In calculating child support, the trial court is required to determine and find for the record the presumed child support amount (PCSA) pursuant to Rule 88.01, using Civil Procedure Form No. 14." *Hoffman v. Hoffman*, 423 S.W.3d 869, 876 (Mo. App. E.D. 2014). "A Form 14 calculation of the PCSA begins with a determination of each parent's gross monthly income." *Id*.

The pleading that initiated the action thus required evidence of both Father's and Mother's earnings. Evidence of earnings is also the evidence Mother needed in order to succeed in an action to increase Father's child support. Put another way, the evidence

---

[6]The pleading did not request that appropriate child support be determined pursuant to Rule 88.01, but specifically requested a "reduction" in Father's child support obligation.

11

Mother admitted in support of her argument raised during trial that she was entitled to an increase in support did not relate solely to whether she was entitled to an increase, the matter she failed to plead. Rather, that evidence was also relevant to whether Father was entitled to a decrease in his support obligation, which was the matter properly before the trial court. Although Mother requested an increase in child support during the trial, she never requested to amend the pleadings; all of the evidence she would need in order to succeed on her theory also bore on a matter squarely contained within the initial pleadings. In short, Mother, who did not file a brief with this court, failed to meet her burden of establishing that Father impliedly consented to try the issue of whether Mother was entitled to an increase in child support.

In sum, no party offered a substantive pleading that properly raised the issue of whether Mother was entitled to an increase in child support. No party requested to amend the pleadings. Because all of the evidence needed to support Mother's contention that she was entitled to an increase in child support also was relevant to Father's contention that he was entitled to a decrease in child support, Mother's contention was not tried by implied consent of the parties. Therefore, the judgment went beyond the scope of the pleadings and is voidable to the extent that it awarded Mother an increase in child support. *See Smith*, 395 S.W.3d at 26. Additionally, apart from the scope of the pleadings, Father makes no argument that the trial court's judgment denying him a decrease in support obligation was not supported by substantial evidence or was against the weight of the evidence. Father failed to prove that he was entitled to the relief he requested. For these reasons, the portion of the judgment adjusting Father's child support

12

obligation is reversed, and the previous judgment establishing the amount of child support remains in effect.

## CONCLUSION

The judgment is reversed to the extent that it increased Father's child support obligation because of Mother's failure to plead the matter. In all other respects, the judgment is affirmed.

_____
Gary D. Witt, Judge

All concur

13