Gary D. Witt, Judge
Scott Dyer ("Father") appeals the judgment of the Circuit Court of Jackson County dissolving his marriage to Nelly-Cerna Dyer ("Mother") and granting Mother joint physical and joint legal custody of the parties' son A.D. ("Child"). Father argues that the court erred in failing to award equal parenting time for each party with Child. Finding no error, the trial court's judgment is affirmed.
Factual Background[1]
Father and Mother were married on May 30, 2009. Child was born to the marriage and is now five years old.
On approximately April 10, 2015, Mother and Father separated. Following the separation, Mother and Child sought an alternative residence while Father remained at the residence owned by Father's mother, Dr. Diann Taylor ("Taylor"). Mother filed a Petition for Dissolution of Marriage on April 15, 2015, along with a Proposed Parenting Plan providing for joint custody and asserting that Mother's address should be used for educational and mailing purposes.
In response, Father filed a counter Petition for Dissolution of Marriage on April 24, 2015. Father filed his Proposed Parenting Plan requesting joint legal and physical custody on April 29, 2015. Father's Proposed Parenting Plan asserted that his address should be used for educational and mailing purposes on behalf of Child and provided equal parenting time under which both parents would alternate parenting time on a weekly basis.
During the time of separation, Father had parenting time with Child on alternating weekends from Friday at 4:00 p.m. to Sunday at 6:00 p.m. and weekly from Wednesday at 4:00 p.m. until Thursday at 6:00 p.m. At all other times, except designated holidays and extended parenting time in the summer, Child was in Mother's care. A *413 Guardian ad Litem ("GAL") was appointed.
A trial was held on August 5, 2016 and August 26, 2016. Mother testified that she was concerned with Father's drinking because when she lived with him, he would drink enough to be intoxicated on a daily basis. Father testified that he drank on a situational basis and Taylor testified that Father drank only one or two drinks a week. Anna Kobe ("Kobe"), Taylor's caretaker, testified that she had only witnessed Father drink one beer during the several year period that she had been caring for Taylor in the same home where Father lived. Mike Bledsoe ("Bledsoe"), Father's friend and Child's godfather, testified that on a night when Father was possibly going to have parental time with Child, Father consumed approximately six beers.
GAL presented a Proposed Parenting Plan, which included that "neither parent shall consume alcohol or other intoxicating substance while the [C]hild is in their care" and that "neither parent shall consume alcohol within 12 hours of residential parenting time." Father testified that he was not in agreement with the language because he wanted the opportunity to have a beer, if he wanted, while Child was in his care.
Mother testified that she was also concerned with Father's firearms. Father had approximately three firearms in the marital residence, one of which was kept loaded. None of the firearms had child safety locks or any other safety device on them that would prevent an individual from pulling the trigger. One of the firearms is a shotgun which was stored under the bed. Mother testified that Child was able to crawl under the bed and touch the shotgun. Father testified that the only weapon in the home which was loaded was in the kitchen out of reach of Child and that all other firearms were stored with the firearm separated from the ammunition. Father is a competitive shooter. Mother also owned at least one firearm she kept in her home.
From July 2015 to July 2016, either Taylor or Mother's mother provided childcare for Child. Father did not agree with enrolling Child in daycare due to the costs and availability of Taylor to provide childcare at no cost. Over Father's objection, Child has been attending Creative World School for childcare since July 2016. Mother testified that she was happy with Creative World School and that Child seemed happy with the program. Father did not take Child to Creative World School during his parenting time but had Taylor provide care for Child when Father was at work.
Taylor suffers from a chronic medical condition which requires her to have a medical caregiver (Kobe) each day because her medical condition precludes her from standing for extended periods of time and periodically results in disabling headaches that require her to lay in bed until the headache passes. Kobe is prohibited by her contract as a caregiver for Taylor, from caring for Child. When Taylor has one of her debilitating headaches she is unable to provide care for Child until the headache passes.
On November 11, 2016, the court entered its Judgment of Dissolution of Marriage ("Judgment"). Within the Judgment, the court considered the appropriate custody arrangement pursuant to section 452.375.5[2] , as well as all relevant factors, *414 including those specifically contained in section 452.375.2.
There were several factors which the court found did not favor either party.[3] These factors are not at issue on appeal. In determining "[t]he needs of the [C]hild for a frequent, continuing and meaningful relationship with both parents" pursuant to section 452.375.2(2), the court acknowledged that both parties have demonstrated the ability and willingness to perform their functions as Mother and Father. However, the court also found that Father regularly drank alcohol while Child was in his custody. The court placed great weight on this factor, especially considering Father's possession of unsecured loaded firearms. The court found this factor favored Mother.
In analyzing "which parent is more likely to allow the [C]hild frequent, continuing and meaningful contact with the other parent" pursuant to section 452.375.2(4), the court acknowledged that both parties have issues with this obligation. The court found that when Mother left the marital residence following the initial separation she denied Father any access to Child for a period of 18 days. The court also found that Father refused to agree to allow Child to attend Creative World School unless Mother agreed to his Proposed Parenting Plan. Ultimately, the court found that this factor favored neither party.
In determining the "[C]hild's adjustment to the [C]hild's home, school, and community" pursuant to section 452.375.2(5), the court acknowledged that Child had spent a significant amount of time since the separation at Mother's residence. As a result, the court acknowledged that Child is adjusted to Mother's home and community. Thus, this factor was found to favor Mother.
Upon review of these factors, the court found both Mother and Father were "fit and proper persons to share joint legal and joint physical custody of the minor child." The court determined that the GAL's Proposed Parenting Plan, as amended by the court, was in the best interests of Child. Father was awarded parenting time on alternating weekends from Friday evening until Monday morning and Wednesdays at 6:00 p.m. until Fridays at 9:00 a.m. on the weeks he does not have parenting time on the weekend. Father and Mother were awarded periods of extended summer parenting time, as well as alternating holidays. Further, the court prohibited either party from consuming intoxicating substances within six hours of transporting Child, and prohibited either party from drinking to the point of intoxication while Child was in that party's care.
Father brings one point on appeal alleging that the trial court erred in not awarding equal parenting time with each party because the trial court's judgment was against the weight of the evidence.
Determining Father's Claim of Error
Before turning to Father's arguments, we must first determine Father's claim of error. Father raises an "against-the-weigh-of-the-evidence" challenge in his point relied on but argues in his sub-points and throughout his argument that the court's findings were not supported by sufficient *415 evidence. A challenge of "insufficient evidence" requires the appellant to demonstrate that there was no substantial evidence to support the trial court's decision as opposed to a challenge that the trial court's judgment was "against the weight of the evidence" which presupposes that there is sufficient evidence to support the judgment. G.E.R. v. B.R. , 441 S.W.3d 190, 196 (Mo. App. W.D. 2014). Father effectively raises an "against-the-weight-of-the-evidence" challenge in his point relied on but argues a "not-supported-by-substantial-evidence" challenge throughout the rest of his brief.
Missouri courts have repeatedly explained that an "against-the-weight-of-the-evidence" challenge is not the same as a "not-supported-by-substantial-evidence" challenge. See, e.g., Hopkins v. Hopkins , 449 S.W.3d 793, 802-03 (Mo. App. W.D. 2014) ; Sauvain v. Acceptance Indem. Ins. Co. , 437 S.W.3d 296, 299 n.1 (Mo. App. W.D. 2014) ; accord Ivie v. Smith , 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Rather, they are "separate and distinct challenges." Hopkins , 499 S.W.3d at 802. We are "restricted to the issues raised in the points relied on." White v. RPM Mgmt., Inc. , 186 S.W.3d 497, 501 (Mo. App. S.D. 2006). Therefore, we will review Father's claim of error under the "against-the-weight-of-the-evidence" standard, as this is the standard he argues in his point relied on.
Standard of Review
We review the trial court's judgment in determining child custody and in determining child support using the same standard as for all court-tried cases. Shields v. Epanty , 503 S.W.3d 227, 231 (Mo. App. W.D. 2016) ; Hall v. Utley , 443 S.W.3d 696, 702 (Mo. App. W.D. 2014). The judgment of the trial court will be affirmed unless the findings lack substantial evidentiary support, are against the weight of the evidence, or an erroneous declaration or application of the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witness." Sharrai v. Sharrai , 322 S.W.3d 641, 643 (Mo. App. W.D. 2010). "We do not reevaluate the testimony." Sparks v. Sparks , 417 S.W.3d 269, 280 (Mo. App. W.D. 2013). We "defer to the trial court even if the evidence could support a different conclusion." Pollard v. Pollard , 401 S.W.3d 506, 510 (Mo. App. W.D. 2013). "We will set aside a judgment as against the weight of the evidence only if we have a firm belief that it is wrong." Sparks , 417 S.W.3d 269, 280 (Mo. App. W.D. 2013). "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." England v. England , 454 S.W.3d 912, 917 (Mo. App. W.D. 2015) ; White v. Dir. of Revenue , 321 S.W.3d 298, 309 (Mo. banc 2010). "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." Ivie, 439 S.W.3d at 205 (internal citation omitted). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases , when it has a firm belief that the decree or judgment is wrong." Id. at 206 (emphasis added).
Analysis
Father's only point relied on asserts that the trial court erred in failing to award equal parenting time to both Father and *416 Mother because the factors under section 452.375.2 that the court found favored Mother or neither party were against the weight of the evidence. In Father's three sub-points on appeal, Father argues that there was insufficient evidence to support the court's finding that the factor set out in section 452.375.2(2) favored Mother, that section 452.375.2(5) should be given no weight as a result of Mother's refusal to allow Father to see Child immediately following separation, and that there was sufficient evidence to find that the factor present in section 452.375.2(4) favors Father over Mother.
Father first argues that the trial court erred in placing great weight on the factor set forth in section 452.375.2(2). Section 452.375.2(2) provides that the court must consider; "[t]he needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child." Father argues that there is insufficient evidence to find this factor favored Mother because the Judgment did not include the prohibition on consumption of intoxicating substances proposed by the GAL, testimony relied upon by the court failed to establish a pattern of alcohol consumption around Child, and no provisions were added to the court's parenting plan prohibiting the possession of firearms. Father relies solely on Kobe's testimony and his own testimony to dispute that he regularly drinks alcohol.
In this argument, Father appears to request this Court to reweigh the evidence and find his evidence to be more persuasive on this point. The appellate court will not set aside the factual determinations of the trial court unless we are left with a firm belief that the trial court's determinations are wrong. See Sharrai , 322 S.W.3d at 643. In its Judgment, the court made the following factual findings regarding Father's drinking:
[T]he Court finds that Father regularly drinks alcohol, including when he has the [C]hild in his custody. The [C]hild's godfather testified that he drank six beers with Father on the night Father was supposed to have parenting time with the [C]hild. Father testified that he does not see a need for a clause in the parenting plan that prohibits the consumption of alcohol by a parent who has physical custody of the [C]hild. The Court finds that this concerning given that Father keeps guns in the home, at least one of which is kept loaded.
Mother testified that prior to separation, Father drank enough to be drunk on a daily basis and this concerned her. Bledsoe testified that on the day Father was to have possible parenting time with Child, Father consumed six beers. Mother further testified that Father owned multiple firearms, one of which she believed to be loaded, that were unsecured and one in the possible reach of Child. While the mere possession of a legal firearm cannot weigh against a party as it is every person's constitutional right to own firearms and here both parties owned firearms, evidence was presented in this case that allowed the trial court to conclude that Father had loaded, unsecured firearms in his home while Child was present.
The trial court is free to believe or disbelieve the testimony of any witness. Sharrai , 322 S.W.3d at 643. "This Court gives the same amount of deference to the circuit court's determination in adoption and child custody proceedings as it does in all other civil cases." Interest of T.T.G. v. K.S.G. , 530 S.W.3d 489, 493 (Mo. banc 2017) (citing Ivie , 439 S.W.3d at 199 n.9 ). "In all of these determinations, the reviewing court is deferential to the fact-findings of the trial court and considers all the *417 evidence and reasonable inferences from the evidence in the light most favorable to the judgment." Id. In short, we must defer to the trial court's factual findings regarding Father's alcohol consumption and potentially unsafe firearm practices, and evidence was presented at trial to support these findings. The evidence provided by Father supporting his position relating to his drinking and firearm possession does not render the court's findings against the weight of the evidence.
Father next argues that the trial court erred in finding that section 452.375.2(5), "[t]he child's adjustment to the child's home, school, and community," favored Mother. Father argues that this determination is against the weight of the evidence since Mother left the marital residence with Child without notifying Father, restricted communication and visitation between Father and Child, and dictated the custodial arrangement leading up to trial. Father argues that this factor favors Father as a result of Mother absconding from the marital residence with Child.
Father's argument, however, fails to address the purpose of section 452.375.2(5), which is to determine the best interest of Child based on whether or not Child is well adjusted to the current configuration of home, school, and community. The court clearly considered and weighed the evidence regarding Child's adjustment to his home and community. There is no language in section 452.375.2(5) requiring the court to weigh the evidence differently based on how Child came to reside in a particular home or community. The fact that Mother moved out of the marital residence with Child and enrolled him in preschool after the parties' separation does not render the court's findings against the weight of the evidence. While Mother's refusal to allow Father contact with Child following the separation was inappropriate and is not condoned by this court it was considered by the trial court, which found that this restriction on Father's contact with Child lasted for 18 days of the over one full year between the time of separation and trial. While Mother unilaterally placed Child in Creative World School over Father's objections that does not mean that this placement was not in Child's best interests or that Child has not become adjusted to this school and the friends he has made there. A trial court should not reward Mother for taking Child and establishing a new home and community for Child. However, in every dissolution there is going to be two homes where there once was one. This factor is just one factor of many that the trial court must consider under the statute. The trial court considered the evidence in this case pursuant to the statutory mandate and determined based upon the totality of the evidence that this factor favored Mother and we defer to the trial court's findings.
Finally, Father argues that the court erred in finding that the factor present in section 452.375.2(4) regarding which parent will allow the other to have frequent, continuing and meaningful contact, favored neither party because there was sufficient evidence to find this factor favored Father. He bases this argument on the 18 day period immediately following separation in which Mother restricted Child's contact with Father. Father further argues again that Mother unilaterally made the determination to enroll Child into daycare, which Father now must help pay for as evidence that the trial court should have found this factor favored him.
Again, Father is inviting us to reweigh the evidence. This we cannot and will not do. The trial court listened to and evaluated the testimony from both Father and Mother as well as the other witnesses. The trial court noted and considered in making *418 its decision that Mother absconded with Child and restricted communication with Father for the time immediately after separation. However, the trial court is not limited to a consideration of this time period in isolation. The trial court also noted that Father refused to engage in an open dialog about Child's education unless his parenting plan was agreed to by Mother. The trial court found that neither parent was more willing than the other to allow frequent, continuing, and meaningful contact with the other parent and accordingly found this factor favored neither party. The fact that Mother did not allow Father to see Child was considered by the court along with all of the other evidence. This one piece of evidence taken in solitude does not render the court's findings against the weight of the evidence.
This is not a score card where each party gets points toward the goal of "winning." It is a balancing that the trial court must do in the Solomonesque attempt to determine what is in the best interests of the child when the parties are not able get along and work well enough together to accomplish this on their own as the parents of that child. Even if Father had been able to establish that a majority of the factors favored him, he would still not be entitled to relief solely on that basis. The factors are not given equal weight in any particular case. One factor, such as number (6) addressing abuse of the child or the former spouse may outweigh all other factors when considered against the overarching consideration of the child's best interests.
In short, the trial court's findings regarding the factors in section 452.375.2 were supported by the evidence and were not against the weight of the evidence. The court clearly considered and weighed the evidence regarding Father's drinking and possession of loaded unsecured firearms in the home with Child, as well as each parties' ability and willingness to allow frequent, continuing and meaningful contact with the other parent. Having considered Father's argument, we are simply not left with a firm belief that the court's judgment is wrong and this does not rise to the level of the rare case when we will grant relief on an against the weight of the evidence challenge. Ivie, 439 S.W.3d at 206. We find the trial court's judgment to be fully supported by substantial evidence and find no error.
Father's point on appeal is denied.
Conclusion
The judgment of the trial court is affirmed.
All concur

We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's credibility determinations. Potts v. Potts , 303 S.W.3d 177, 184 (Mo. App. W.D. 2010).

All statutory citations are to RSMo 2000 as updated through December 31, 2016 cumulative supplement, unless otherwise indicated.

Section 452.375.2(1) ("The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties"); section 452.375.2(3) ("The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests"); section 452.375.2(6) ("The mental and physical health of all individuals involved"); section 452.375.2(7) ("The intention of either parent to relocate the principal residence of the child"); section 452.375.2(8) ("The wishes of a child as to the child's custodian").