

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

S.F.G. BY NEXT FRIEND A.E.R., AND )  No. ED107517
A.E.R., INDIVIDUALLY, )
                     ) Appeal from the Circuit Court
       Respondent, ) of Washington County
                     )
vs. ) Hon. Troy K. Hyde
                     )
A.M.G., )
                     ) Filed:
       Appellant. ) December 31, 2019

A.M.G. ("Mother") appeals from the judgment entered by the trial court on the petition of A.F.R. ("Father") for paternity and child custody, awarding Father sole legal and physical custody of the parties' minor child ("the Child") with visitation to Mother, awarding child support to Father, ordering Mother to pay $3,500 of Father's attorney's fees and ordering Mother to pay $2,450 of the $3,450 in guardian ad litem fees.[1] We affirm in part and reverse and remand in part.

---

[1] As for paternity, the judgment notes that Mother and Father acknowledge that Father is the biological father of the Child and that he was previously declared to be the biological father pursuant to an administrative order. The trial court reaffirmed the finding of paternity, and it is not challenged on appeal.

In addition, Father requested the Child's name be changed. Father testified that he was present for the Child's birth and that he and Mother had discussed the name for the Child at the hospital. After he left, Mother changed the paperwork for the Child's name. Father testified that Mother intentionally gave the Child a name she knew had a negative connotation in Father's family. Father also requested the Child's surname be changed to his surname since it was respected in the community and it would be in the Child's best interest to have the same surname as her siblings and household members. Mother objected. The trial court found Father credible on this issue. In its judgment, the trial court concluded that it would not be in the Child's best interest to change the Child's first name but ordered that her surname be changed to Father's surname. This finding is not challenged on appeal.

The Child was four years old at the time of trial, and the record indicates that the Child suffers various medical conditions and developmental delays, including: autism, obstructive sleep apnea, failure to thrive, asthma, gross motor delay, fine motor delay, Ehlers-Danlos Syndrome and hypersensitive sensory processes disorder. At the time of Father's petition, the Child lived with Mother who testified that she managed all of the Child's complicated medical care and appointments with various providers and that Father was not involved in the Child's care and treatment. Mother also claimed to have an order of protection against Father. In addition, during the two years the case was pending, a GAL was appointed, Mother sought two temporary restraining orders against Father and there were six court orders regarding custody and visitation. Father testified to various periods when his visitation was withheld by Mother in violation of the trial court's orders and to multiple allegation of suspected abuse of the Child against Father, which were all found to be unsubstantiated or without sufficient evidence. Following trial, the trial court entered a judgment granting Father sole legal and physical custody with visitation to Mother on alternating weekends. Mother was also ordered to pay $115 in monthly child support, $3,500 of Father's attorney's fees and $2,450 of the remaining $3,450 GAL fees. This appeal follows.

Mother raises four points on appeal: (1) the trial court erred in awarding sole legal and physical custody to Father because there was no substantial evidence to support the decision and because the award was against the weight of the evidence in that the trial court failed to focus on the custody arrangement that was in the Child's best interest but instead focused on actions during the litigation, thereby misapplying the applicable statute; (2) the trial court erred in awarding sole legal and physical custody to Father because there is no

substantial evidence to support the decision and the decision is against the weight of the evidence in that the trial court made factual conclusions that form the basis for its judgment which were not supported by the evidence at trial; (3) the trial court erred in awarding child support to Father because there was no substantial evidence to support the decision and the decision was against the weight of the evidence in that the trial court's conclusion that Mother was capable of working and earning was speculative, unsupported and unsubstantiated given that that the only evidence presented on the issue was that Mother was receiving disability benefits and (4) the trial court erred in apportioning GAL fees and attorney fees because there was no substantial evidence to support the decision and it was against the weight of the evidence in that the court was inappropriately influenced by and placed undue weight upon inaccurate and misleading testimony about Mother's actions during the pendency of the case.

We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence or it erroneously declares or applies the law. *Sutton v. McCollum*, 421 S.W.3d 477, 479 (Mo. App. S.D. 2013). "Substantial evidence means competent evidence from which the trial court could reasonably decide the case." *Dunkle v. Dunkle*, 158 S.W.3d 823, 832 (Mo. App. E.D. 2005) (internal quotation marks omitted). "We defer to the trial court's superior ability to assess the credibility of witnesses and view all the facts and reasonable inference in the light most favorable to its decision." *Id.* at 832-33. "In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment." *Sutton*, 421 S.W.3d at 479 (internal quotation marks omitted). The weight of the evidence refers to weight in probative value not the quantity of the evidence. *Id.* We

exercise extreme caution in considering whether a judgment should be set aside because it is against the weight of the evidence and will do so only when we have a firm belief the judgment was wrong. *Id.*

Mother's first two points on appeal involve the trial court's custody award. In her first point, Mother argues the trial court erred in awarding Father sole legal and physical custody because there was no substantial evidence to support the decision and the decision was against the weight of the evidence in that the trial court failed to focus on the custody arrangement that was in the Child's best interest but instead focused on actions during the litigation, thereby misapplying the applicable statute. In particular, Mother claims she demonstrated the ability to make the necessary living, legal and medical decisions and arrangements for the Child's best interest and Father has not. Instead, Father has indicated an inattention to the Child's needs and likelihood that he would deny the Child necessary medical treatment. Mother claims that when relevant factors for determining custody are considered, the trial court's decision is against the weight of the evidence.

We note at the outset that Mother's point relied on combines a substantial-evidence challenge, an against-the-weight-of-the-evidence challenge and a misapplication-of-the-law challenge. These are distinct claims and must appear in separate points relied on in Mother's brief to be preserved for our review. *See Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D 2014); *Cerna-Dyer v. Dyer*, 540 S.W.3d 411, 415 (Mo. App. W.D. 2018); *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). We will review the point *ex gratia*. A substantial-evidence challenge and an against-the-weight-of-the-evidence challenge necessarily involve review of the trial court's factual determinations. *Hopkins*, 449 S.W.3d at 802. "A court will overturn a trial court's judgment under these fact-based

standards of review only when the court has a firm belief that the judgment is wrong." *Id.* (internal quotation marks omitted). "In reviewing questions of fact, the appellate court defers to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Id.* (internal quotation marks omitted).

"With respect to custody and visitation issues, the trial court has broad discretion, and we give even greater deference to these decisions than in other civil cases." *Dunkle*, 158 S.W.3d at 833. We do not reweigh the evidence, even if the evidence could have supported a different conclusion. *Id.* We presume the trial court awarded custody consistent with the child's best interests after reviewing all of the evidence and will reverse the decision only if we are firmly convinced that the welfare and best interest of the child require otherwise. *Id.*

Section 452.375 applies to the initial custody award in paternity cases as well as dissolution cases. *Sutton*, 421 S.W.3d at 481 (internal quotation marks omitted). According to Section 452.375.2, the trial court "shall determine custody in accordance with the best interests of the child." When the parties are unable to agree on all issues related to custody, the court shall consider all relevant factors and enter written findings and conclusions of law, including, but not limited to, the following:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interest;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. . . .;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. . . . .

The trial court considered each of these factors in its judgment here. The trial court noted that Father's parenting plan requested sole legal and physical custody to Father while Mother's parenting plan requested sole legal and physical custody to Mother. While Mother argues the trial court erred in granting Father sole legal custody because Mother has demonstrated the ability to make the necessary legal and medical decisions and arrangements for the Child's best interest, Mother concedes in her brief that legal custody should rest with only one parent given that "the parties harbor significant animosity to one another and have major impediments to a cooperative approach to parenting of [the Child]." Mother argues that it is in the Child's best interest for Mother to be awarded sole legal custody given Mother's demonstrated ability to make the necessary legal and medical decisions and arrangements. ``

Within its discussion of the parties' parenting plan per Section 452.375.2(1), the trial court found that Mother and Father cannot communicate with one another based on their history of animosity and Mother's selective enforcement of her order of protection Mother purported to have against Father. The trial court found that Mother claimed to have an order of protection for a period of four years, but also found that Father testified that Mother had come to Father's residence, walked into Father's residence, arrived ninety

6

minutes early to points of exchange to pick up the Child, suggested she accompany Father on his day trips for visitation and claimed Father met her in a park and had sexual relations. The trial court further noted Father's testimony that when he attempted to communicate via "Talking Parents," a platform for communication between the parties which was set up by Mother's counsel, Father was reported for violating the order of protection. The trial court also noted that Mother communicated with Father via "Talking Parents" during periods of time when the Child was with Father, but Mother refused to communicate with Father via "Talking Parents" when the Child was in her custody. Based upon this conduct, the trial court found that joint legal custody is not in the Child's best interest. The trial court did not believe the parties met and had sexual relations in the park, found Mother not credible and determined that "Mother's behavior lends itself to an award of sole legal custody to Father."

As for other factors included in Section 452.375.2, the trial court found the Child is adjusted to both Mother's and Father's homes and communities and that both are willing to perform their duties as parents. The trial court also found that Mother is not willing to allow Father frequent and meaningful contact with the Child and that Father was more likely than Mother to provide the other parent with frequent and meaningful contact.

In reaching this conclusion, the trial court detailed the history of the case, including six orders on custody and visitation and Mother's repeated violations of those orders in withholding visitation from Father since his petition was filed, including Father's Day and other holidays, in some cases for more than thirty days at a time. Mother alleged on two different occasions during the pendency of the case that Father committed abuse or neglect, but the trial court found that no safety plans, orders of protection, temporary restraining

7

orders or other orders affording Mother the authority to violate the pendente lite judgments in effect at the time of those allegations. All allegations of abuse were found to be unsubstantiated or without sufficient evidence. The trial court specifically found no justification for Mother's continued violations of the court's orders. The trial court found that on one particular trial date, Mother did not appear, and the case was continued at Mother's request. Given this history, the trial court concluded that Mother was not going to follow any court order, was not going to allow Father visitation and would continue to violate court orders without good cause.

The trial court also found that Mother testified that there was domestic violence committed by Father during their relationship, which Father denied. The trial court found that Mother offered no photographs, police reports or other evidence to support these allegations, and Father was never charged with any crimes arising out of any alleged altercation. The trial court concluded that if there was domestic violence between the parties, it did not affect either party's ability to parent the Child. The trial court again found that it did not find Mother credible since she alleged that she had a romantic liaison with Father while the case was pending, which Father denied.

As for any physical or mental impairments, the trial court concluded that Father does not suffer any impairments that would interfere with his ability to parent. The trial court determined that Mother does have a mental impairment noting that she sent Father a picture of what she purported to be an ultrasound of her triplet pregnancy and claimed that the triplets were Father's. The GAL demonstrated at trial that the first result obtained from a general google search for "triplet ultrasound" is the exact photo that Mother sent Father. Mother testified that her photo must have been somehow obtained by another source and

insisted that it was hers. The trial court determined that Mother and Father did not engage sexual relations and again determined that Mother was not credible. The trial court further concluded that if Mother truly believed that the photo identified via google search is her ultrasound, she is suffering from a delusion and is not capable of being the primary caregiver of the Child. The trial court found that records in the case referenced Mother's history of depression, even though Mother insisted those records were referring to Mother's own mother, the Child's grandmother, which the trial court again found not credible.

The trial court further found that Mother called one of her other children to testify to claims that the other child had been abused by Father during a period of time when Father and Mother were in a relationship. The trial court determined that the child was confused and easily manipulated and assigned no weight to her testimony. The trial court further found that the Children's Division had investigated all allegations of the witness alleged against the Father and two other potential male figures and found that the allegations were sufficiently investigated and not credible. The court again found it did not assign any weight to those allegations.

The trial court also found that Mother testified that she planned to relocate but refused to disclose her address to Father. The trial court found that Father does not plan to relocate, and his residence was inspected by the GAL, who recommended repairs which were made by Father and confirmed by the GAL.

There is not a specific formula for how a trial court should weigh the non-exclusive list of best-interest factors in Section 452.375.2 when making its custody determination. *Dunkle*, 158 S.W.3d at 836. "Instead, after properly considering those factors, the trial court has

9

broad discretion to determine what arrangement is in the best interests of the children under the particular facts of each case." *Id.* In addition, we defer to the trial court's credibility determinations because of "its superior position to observe the sincerity and character of witnesses, as well as intangibles not evident from the record." *Mehler v. Martin*, 440 S.W.3d 529, 534 (Mo. App. E.D. 2014).

Mother argues that the trial court failed to consider the Child's complicated medical or other needs. Mother points to evidence in the record that the Child suffers from autism, obstructive sleep apnea, failure to thrive, asthma, gross motor delay, fine motor delay, Ehlers-Danlos Syndrome and hypersensitive sensory processes disorder. She claims there is no weighing of the evidence on the Child's complicated medical needs in the trial court's judgment, and instead, the trial court was punishing her for what it perceived to be poor conduct and not focusing on the best interest of the child as required by the statute. Mother claims she has arranged for treatment from a myriad of specialists to address the Child's conditions and her overall development and wellbeing. Mother notes that during his visitation, Father refused to keep a daily food diary and have the Child drink her daily supplement and that he refused to recognize that Child suffers from a failure to thrive, refused to have the Child use her braces or return them to Mother, failed to take the Child to her medical appointments during Father's period of visitation even though Father was aware of the appointments and not working at the time of the appointments and failed to follow up with any of the providers previously treating the Child or procure alternative treatment in any form. Mother argues that while Father complained that he was not given the opportunity to understand or participate in the Child's treatment, when he had custody for two weeks and was advised of nine of the Child's appointments, he did not take her and

10

avail himself of the opportunity to meet with the professionals involved in her care. Mother points out that Father was aware of the trial court's order that he take the Child to all of her medical appointments while he had visitation and that Father admitted that he had not determined if the kind of care the Child needed would be available in his area should he be awarded full custody. Mother argues that the trial court's willingness to cast the Child out of the network of treatment she was receiving without any concrete plans or assurances for follow-up indicated that the trial court failed to act in the Child's best interest in its custody determinations.

While there is admittedly no detailed discussion in the judgment of the Child's complicated medical care, Father testified that he was better fit to raise the Child. He testified that Mother never provided him with documentation of the Child's diagnoses and therapies until near the time of trial, that he had only recently been given any time with the Child, that he wanted to be involved in the Child's care, that he requested the Child's Medicaid card from Mother on more than one occasion so that he could take the Child to her appointments but never received any type of response, that if he had a Medicaid card he would take the child to a pediatrician for an evaluation and that he understood the Child had major health concerns but that he wanted a second opinion because what he saw in the records was inconsistent with his experience with the Child. While Father admitted he would be starting from "square one" and that he did not understand all of the Child's diagnoses, he represented to the trial court that he would "absolutely" make arrangements for the Child's medical care and treatment if he were granted custody. He testified that if he were awarded custody and the Child did in fact demand significant medical care, he or his girlfriend with whom he lives would quit working to stay at home to meet the Child's

11

needs. Father also testified to the possibility that he would pursue a college degree in a field working with children. Father also testified to being willing and able to communicate with Mother through Talking Parents.

This is not an easy case, both because of complicated needs of the Child but also the difficult history between Mother and Father. Though not explicit about its consideration of the Child's complicated medical situation, the trial court considered the factors enumerated in Section 452.375.2. While consideration of the Child's complicated medical situation is important to a determination of her best interest, the judgment details several other considerations the trial court made in determining the Child's best interest in terms of custody. Father will have to start from "square one" as he admits, but he also testified to being willing to manage and accommodate the Child's needs, even if it means that either he or his girlfriend quit working. Just because Mother may have been capable of managing the Child's complicated medical situation does not mean Father could not and should not do the same, particularly where the trial court found that other factors in its analysis of Section 452.375.2 favored Father's custody of the Child in this case. It is clear from the judgment that the trial court did not find Mother credible and had concerns about her repeated violations of court orders and unauthorized withholding of visitation from Father, and those concerns clearly impacted the trial court's best-interest determination.

We will not reweigh the evidence here, even if it could have supported another conclusion. While Mother has pointed to evidence that might have supported a conclusion on custody contrary to the trial court's judgment given what she claims is her demonstrated ability to manage the Child's complicated medical situation, the conclusion advocated by Mother is not the only conclusion that could have been reached. Based upon our review

of the record, the trial court's credibility determinations and the trial court's broad discretion in making custody determinations, we cannot say the award is not supported by substantial evidence, was against the weight of the evidence or involved a misapplication of the law.

Point I is denied.

For her second point, Mother claims the trial court erred in awarding Father sole legal and physical custody because there was no substantial evidence to support the decision and the decision was against the weight of the evidence in that the trial court made factual conclusions that form the basis for its judgment which were not supported by the evidence at trial. Similar to the first point, this point relied on combines a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge, which are distinct claims and must appear in separate points relied on in Mother's brief to be preserved for our review. *See Hopkins*, 449 S.W.3d at 802; *Cerna-Dyer*, 540 S.W.3d at 415; *Ivie*, 439 S.W.3d at 199 n.11. We will again review the point *ex gratia*.

Mother specifically identified the following incorrect factual conclusions contained in the trial court's judgment:

a)      the statement that Mother claimed that she took the Child to medical appointments throughout the day and that Mother claimed that appointments were from 6:00 a.m. to 6:00 p.m. Monday through Friday;

b)      the statement that there was no documentation of the Child's medical needs and schedule submitted;

c)      the statement that "[Father] has complied with all the orders of the court; [Mother] has complied with no orders of the court;"

d)      the statement that Mother's four other children were in an adoptive relative placement and

13

e)     the statement that due to Mother's statements about an earlier pregnancy, she was suffering from a delusion.[2]

Mother argues that the tenor and language of the trial court's judgment suggest that the trial court ordered the change in custody to punish Mother. She claims the incorrect statements in the trial court's judgment inappropriately paint her in an unfavorable light and demonstrate the trial court misread or misinterpreted the evidence to such an extent that there is no substantial evidence to support the decision to award sole legal and physical custody to Father and that decision is against the weight of the evidence and a risk to the Child's health and long-term development.

We concluded in point one above that there was substantial evidence to support the trial court's custody determination and that the determination was not against the weight of the evidence and did not involve a misapplication of the law. We agree that at least some of the statements in the trial court's judgment as identified in this point by Mother are incorrect in that Mother did not claim that she took the Child to appointments from 6:00 a.m. to 6:00 p.m. Monday through Friday, that Father violated court orders in not taking the Child to her appointments during his visitation times and that Mother explained that only three of the four of Mother's other children are in adoptive relative placement. Nevertheless, and even cumulatively, these incorrect statements do not impact the overall

---

[2] Mother does not identify the page of the trial court's judgment upon which each of these allegedly incorrect statements appear. In particular, we are unable to identify where the trial court made the allegedly incorrect statement that there was no documentation of the Child's medical needs and schedule submitted. Even if such a statement is included in the judgment, it does not require reversal on this point.

As for Mother's claim that she offered medical documentation indicating she was in fact pregnant during the time the trial court determined that she was delusional relative to her claimed triplet pregnancy with Father, Mother misinterprets the trial court's finding. Mother's medical records may confirm her pregnancy, but the trial court concluded that Mother was delusional not for believing she was pregnant but for believing the ultrasound she sent Father was her own given that it is same image as the first result identified on a google search of "triplet ultrasound."

14

custody determination to such a degree that we must find it was not supported by substantial evidence or was against the weight of the evidence as Mother argues here.

Point II is denied.

For her third point on appeal, Mother claims the trial court erred in awarding child support to Father because there was no substantial evidence to support the decision and the decision was against the weight of the evidence in that the trial court's conclusion that Mother was capable of working and earning was speculative, unsupported and unsubstantiated given that that the only evidence presented on the issue was that Mother was receiving disability benefits. Again, like the first two points, this point relied on combines a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge, which are distinct claims and must appear in separate points relied on in Mother's brief to be preserved for our review. *See Hopkins*, 449 S.W.3d at 802; *Cerna-Dyer*, 540 S.W.3d at 415; *Ivie*, 439 S.W.3d at 199 n.11. We will again review the point *ex gratia*.

The only evidence in the record on this issue was that Mother was not working and had been on disability for seven years related to a medical condition that causes her blood pressure to drop and her to pass out, and she testified to receiving about $770 in total disability each month. Mother's income and expense statement itemized monthly income of $582 in "SSI," $171 in "SSA," and $234 in "T/A" for a total of $987.[3] Her property statement indicated that Mother had $6,131 in non-marital property, $6,253 in debt and $3,000 in equity on her automobile. No other property, debt or equity was identified.

---

[3] Mother also noted on her income and expense statement that she received $380 each month in food stamps.

The trial court in its order found that Mother has income of $987 per month but found that she is underemployed and imputed minimum wage at $1365 per month, presumably based upon a forty-hour work week. The trial court also credited Mother for having one other child in her custody and provided a 6% credit for Mother's overnights per its own Form 14. Mother was therefore ordered to pay $115 per month in child support, and Father's child support obligation was terminated.

We will sustain the judgment of the trial court on a challenge to a child support award unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Monnig v. Monnig*, 53 S.W.3d 241, 244 (Mo. App. W.D. 2001). "We afford the trial court deference with regard its determinations of credibility and view the evidence in the light most favorable to its decision." *Id.* (internal quotation marks omitted). "We will not disturb a child support award unless the evidence is palpably insufficient to support it." *Hoffman v. Hoffman*, 423 S.W.3d 869, 876 (Mo. App. E.D. 2014).

When calculating child support, "the trial court is required to determine and find for the record the presumed child support amount (PCSA) pursuant to Rule 88.01, using Civil Procedure Form No. 14." *Id.* Such a calculation begins with a determination of each parent's gross monthly income. *Id.* The directions and comments for use for Form 14 provide that gross income may be imputed if a parent is unemployed or found to be underemployed. *Id.* "The trial court's determination of whether to impute income to a party is within its discretion and we will not reverse the trial court's determination absent a manifest abuse of that discretion." *Id*. (internal quotation marks omitted).

16

The Comments to Form 14 indicate that the process to impute income is both backward and forward-looking. *Sherman v. Sherman*, 160 S.W.3d 381, 387 (Mo. App. W.D. 2004). "In addition to a parent's work history, the court must consider future employment and income potential and the availability of earning opportunities in the community." *Id*. Income is imputed to provide the appropriate level of support for the children. *Id.* at 388. Imputation encourages a parent, who may otherwise be limiting income to escape family responsibilities, to take advantage of income-producing opportunities. *Id.* The process seeks to prevent underemployment so as to garner more assets for the family. *Id.* "However, imputing an amount that has no basis in the evidence or is beyond the capability of the parents does not legitimately achieve this goal." *Id.* Even though the trial court can impute income to a party, a child support award must be supported by evidence at trial of the parent's ability to pay, and the trial court is not allowed to rely on speculation. *In re Marriage of Johanson*, 169 S.W.3d 897, 899-900 (Mo. App. S.D. 2005).

No evidence was presented from which the court could have imputed income to Mother as it did here, and there was no evidence that Mother has the ability pay child support based on the trial court's imputation. There is nothing in the record to establish that Mother is capable of working. The only evidence in the record is that Mother does not work, that she has received disability for several years due to a medical condition and the amount of disability she receives. There was no evidence of her work history, occupational qualifications, future employment and income potential or the availability of earning opportunities in her community. While the issues involving imputation of income are highly fact-dependent and must be determined on a case-by-case basis, *Pelch v. Schupp*,

17

991 S.W.2d 729, 736 (Mo. App. W.D. 1999), there is simply a dearth of evidence in the record to indicate that Mother's income should be imputed as the trial court did here. Accordingly, the judgment is reversed and remanded for a determination of the appropriate amount of child support.

Point III is granted.

For her fourth point on appeal, Mother claims the trial court erred in apportioning GAL fees and attorney fees because there was no substantial evidence to support the decision and it was against the weight of the evidence in that the court was inappropriately influenced by and placed undue weight upon inaccurate and misleading testimony about Mother's actions during the pendency of the case. Again, this point relied on combines a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge, which are distinct claims and must appear in separate points relied on in Mother's brief to be preserved for our review. *See Hopkins*, 449 S.W.3d at 802; *Cerna-Dyer*, 540 S.W.3d at 415; *Ivie*, 439 S.W.3d at 199 n.11. We will again review the point *ex gratia*.

"Parties to domestic relations cases generally are responsible for paying their own attorney's fees." *Serafin v. Serafin*, 493 S.W.3d 897, 902 (Mo. App. E.D. 2016). Section 452.340.7 provides that the court "shall also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred by the prevailing party." In addition, Section 452.355.1 authorizes the trial court award attorney's fees "after considering the financial resources of both parties, the merits of the case, and the actions of the parties during the proceedings." *Id.* Here, as part of his petition, Father requested the court enter his parenting plan which granted him sole legal and physical custody, and he also requested an award of his attorneys' fees.

18

"While an award of attorney's fees must be supported by competent and substantial evidence, the trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees." *Id.* "As an expert on the necessity, reasonableness, and value of attorney's fees, the trial court may independently determine and award the fees it deems appropriate." *Id.* Further, "[w]hen a trial court has before it evidence that fees and expenses were a result of a party's misconduct during litigation, such evidence provides a sufficient basis for an award of attorney fees, even where the parties' financial condition does not otherwise necessitate an award of fees." *In re Marriage of Geske*, 421 S.W.3d 490, 499 (Mo. App. S.D. 2013) (internal quotation marks omitted).

The trial court can consider the principal issues that caused the attorney's fees. *Serafin,* 493 at 903. "The trial court has broad discretion in awarding attorney's fees and its ruling is presumptively correct." *Id.* We will reverse a trial court's award of attorney's fees under Section 452.355.1 only if the trial court abuses that discretion. *Id.* "To demonstrate an abuse of discretion, the complaining party must prove that the award is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

Section 452.423.5 provides that the GAL "shall be awarded a reasonable fee for such services to be set by the court," and "[t]he court, in its discretion may . . . [a]ward such fees as a judgment to be paid by any party to the proceedings or from public funds." Accordingly, this Court should not disturb the trial court's award of GAL fees absent an abuse of discretion. *Keel v. Keel*, 439 S.W.3d 866, 880 (Mo. App. E.D. 2014). As previously noted, Section 452.340.7 provides that "[t]he court shall also award, if requested and for good cause shown, reasonable expenses, attorney's fees and court costs incurred

19

by the prevailing party." "When ordering the payment of guardian ad litem fees, the court may consider the circumstances which necessitated the appointment of the guardian." *Wuebbeling v. Clark*, 502 S.W.3d 676, 685 (Mo. App. E.D. 2016) (internal quotation marks omitted).

With respect to attorneys' fees, the Court found that Mother intentionally violated the court's orders prompting Father to incur additional fees and that Father filed a family access motion requesting compensatory time with the Child after having several periods of visitation withheld from him by Mother in violation of the trial court's orders. The trial court also found that Mother failed to appear on more than one occasion when the matter was set for trial. The trial court concluded that Mother's conduct was such that Father was entitled to attorney's fees, and Mother was ordered to pay $3,500 toward Father's fees. With respect to the GAL fees, the trial court concluded that the fees totaled $3,450. Father was ordered to pay $1,000, and Mother was order to pay $2,450. Mother claims the tenor and language of the trial court's judgment suggest the trial court was so critical of Mother that it awarded fees and costs against her as a punishment, and the awards should therefore be set aside.

There is evidence in the record supporting the trial court's conclusion that Father's fees and expenses were a result of Mother's misconduct during litigation, and that evidence provided a sufficient basis for an award of attorney's fees, even if the parties' financial situations did not otherwise necessitate an award of fees. *See Geske*, 421 at 499. With respect to the GAL fees, Father was the prevailing party, and Mother requested the appointment of the GAL at the same time she filed a motion for a temporary restraining order that involved an allegation of abuse. A second motion for TRO was filed a year later

20

based upon additional allegations of abuse by Father. There is nothing in the record to indicate any of the allegations of abuse were substantiated in any way, but Mother's claims in this case necessitated the GAL's intervention. There were six orders involving changes in temporary custody during the time that this case was pending, and Father testified to Mother's failure to comply with those orders. He testified extensively about periods of visitation that were withheld from him and to the repeated instances when Mother would not call or show up at the assigned exchange point. As the trial court found, because of all the visitation time that was withheld from Father, he filed a motion for family access requesting compensatory time, and Mother failed to appear in court on at least one occasion.

Accordingly, Mother has failed to persuade us that the award of attorney's fees was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. Similarly, we find no error in the trial court's order that Mother pay $2,450 of the remaining $3,450 in GAL fees because Mother's action necessitated the GAL's intervention, Father was the prevailing party and the assessment of such fees was within the trial court's discretion. *See Keel*, 439 S.W.3d at 881; *see also Noland-Vance v. Vance*, 321 S.W.3d 398, 425-26 (Mo. App. S.D. 2010).

Point IV is denied.

We reverse the portion of the judgment awarding child support and remand the case to the trial court for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Roy L. Richter, J., concur.